# CHARLESTON.

## WALKER v. RUFFNER.

*(GREEN, JUDGE, absent.)

Submitted January 26, 1889.—Decided March 4, 1889.

1. JUDICIAL SALES—DECREE.

R., administrator of M., filed a bill in the County Court of Kanawha county in April, 1876, against W. and others to enforce a vendor's lien on a lot of land situated in Charleston, W. Va., then owned and claimed by W. R. acted as solicitor for plaintiff and was appointed special commissioner to make the sale in June, 1876. After being offered on several occasions, and the sale postponed at one time to accommodate W., said lot was sold on the 25th day of November, 1876, for $700 00, which appears to have been all it was worth at the time. B. H. S. and R.; as such administrator, became the purchasers. The sale was confirmed without exceptions on the 20th day of December 1876, and the purchasers went into possession and have so continued. After the application of the proceeds of said sale there was left a balance due said administraor, and a decree was rendered against W. for said balance, which was voluntarily paid by

------
*On account of illness.

38

W., October, 28,1881. Since said sale said property has increased in value from several causes, and when this suit was brought, in 1887, was worth about $3000.00. *Held:* The decree appointing R. a special commissioner to make sale of said lot and the decree confirming the purchase by R. as such administrator, were voidable, and could have been so shown by W. in the suit, which directed the sale, to which he was a party, if he had been so disposed.

2. STATUTE OF LIMITATIONS—DECREE.

After the lapse of nearly ten years a party to a suit will not be heard to impeach a decree rendered therein by original bill under the circumstances shown in this case, unless some valid excuse is shown for this long delay.

*Brown & Jackson* and *Miller & Gallaher* for appellants.

*Knight & Couch* for appellee.

ENGLISH, JUDGE:

At the May rules in the year 1876, David L. Ruffner, administrator of the estate of Maria McFarland, deceased, filed a bill in chancery in the County Court of Kanawha county against Henry S. Walker, The Charleston Institute, a corporation under the laws of West Virginia, Charles C. Lewis, Benjamin H. Smith and Isaac N. Smith, defendants, in which he alleged in substance, that the said The Charleston Institute being possessed in fee of a parcel of land on the southeast side of Summers street between Virginia and State streets in the city of Charleston Kanawha county, W. Va., laid off said parcel of land into lots and proceeded to sell the same and did sell lot No. 1 of said parcel of land to the appellee, Henry S. Walker, at the price of $1,600.00, of which sum said Walker paid $500.00 at the time of sale and executed four notes, dated the 26th day of April, 1873,— the first for $20.00 payable one year after date; the second for $360.00 payable two years after da'e; the third for $360.00 payable three years after date; and the fourth for $360.00 payable four years after date,—all payable to the order of the Charleston Institute at the First National Bank of Charleston, and all bearing interest at six *per cent. per annum* from date until paid; to secure the payment of which the vendor's lien was retained upon said lot No. 1, which lot is described in a certified copy of the deed to said Henry S.

Walker, which is filed as Exhibt No. 1 with said bill; that the said The Charleston Institute transferred to said Maria MacFarland, who was then in life, the second and third notes for $360.00 each, payable respectively at two and three years after date, in consideration for some stock, she then held in The Charleston Institute, which was surrendered by her and retired and cancelled; that said Maria McFarland died in July, 1874, and that the plaintiff, as her duly qualified administrator, holds said two notes, one of which would fall due on the 29th day of April, 1875, and the other on the 29th day of April, 1876; that no part of said notes or either of them had been paid, and he exhibits them with his bill; that said $20.00 note was assigned by The Charleston Institute to C. C. Lewis and had been fully paid; that the fourth of said notes for $360.00 due four years after its date was assigned by said Institute to Benjamin H. Smith and Isaac N. Smith, and the plaintiff did not know, whether any part of the same was paid or not, and called on B. H. and I. N. Smith to discover how much, if anything, had been paid upon the note held by them; and prayed, that said lot No. 1 might be sold by virtue of the lien reserved as aforesaid in said deed.

C. C. Lewis answered said bill, admitting the payment of said $20.00 note by the defendant Henry S. Walker; and the defendants B. H. and I. N. Smith answered said bill stating, that they were the owners of the fourth purchase-money note given by Henry S. Walker as part of the deferred instalments for said lot No. 1; that said note was for $360.00 dated April 26, 1873, and payable four years after date with interest subject to a credit of $200.00 paid May 15, 1874, and prayed, that it might be decreed to be a lien upon said lot, and that their interest might be protected; and they filed said note with the credit indorsed with their answer.

On the 28th day of June, 1876, a decree was entered in said cause ascertaining the aggregate amount of the notes held by plaintiff, including interest to that date, to be $856,-80, and that the balance due on said fourth note held by I. N. and B. H. Smith was a lien upon said lot No. 1; and decreeing, that ,unless the defendant Henry S. Walker should pay said sum found due the plaintiff with interest within

thirty days from the date of said decree, said David L. Ruffner, who was thereby appointed a special commissioner for the purpose, should advertise and sell said lot for cash as to twenty five *per cent.* of the purchase-money, and as to the residue upon a credit of twelve, eighteen and twenty four months.

It appears from the report of David L. Ruffner, special commissioner, that said Henry S. Walker having failed to pay, as required by said decree, the amount therein ascertained to be due plaintiff, he advertised said property for sale on the 12th day of October, 1876, and after postponing said sale on several occasions he finally on the 27th day of November, 1876, sold said lot to B. H. Smith (who was the sole owner of said note assigned to B. H. Smith and I. N. Smith) and to D. L. Ruffner, as administrator of M. McFarland, deceased, jointly in proportion to their respective claims upon the said lot, at the price of $700.00, that being the highest bid for the same. On the 20th day of December, 1876, said sale was confirmed by the court, and the amount so bid on said lot after deducting the costs and commissions was so apportioned as to credit the amount due plaintiff from said defendant Walker with the sum of $495.82, leaving still due plaintiff from said Walker a balance of $382.40, and also to credit the amount due said B. H. Smith with $118.58, leaving still unpaid on said note as of November 27, 1876, the day of the sale, the sum of $91.66; which report remaining unexcepted to was confirmed, and judgment was rendered against said Walker for said balance of $382.40 and interest, and execution was awarded on said judgment; and William A. Quarrier, as special commissoner, was directed to convey said lot or parcel of land to said D. L. Ruffner, administrator as aforesaid, and B. H. Smith jointly in the proportion of 807–1000 to the former and 193–1000 to the latter; which deed was executed by said Quarrier, as special commissioner, dated on the 20th of December, 1876, and acknowledged the 11th day of July, 1881.

On the first Monday in February, 1887, said Henry S. Walker filed a bill in the Circuit Court of Kanawha county against said David L. Ruffner, administrator of Maria McFarland, deceased, The Charleston Institute, a corporation,

Charles C. Lewis, B. H. Smith, D. C. Gallaher, administrator of I. N. Smith deceased, and the unknown heirs at law of Maria McFarland deceased, the object of which was to vacate, annul and set aside the sale made by said David L. Ruffner, as special commissioner, and to cancel and annul the deed made in pursuance of said sale to said David L. Ruffner, as administrator of the estate of Maria McFarland, deceased, and B. H. Smith.

The plaintiff in said bill sets forth in·detail the circumstances in reference to the purchase of said lot by himself from The Charleston Institute, the amount of purchase-money he was to pay, the amount paid in cash, and the time and manner, in which the residue was to be paid, also the manner, in which the said Maria MacFarland's administrator asserted a vendor's lien against said lot No. 1; that said bill was filed by said D. L. Ruffner, solicitor for D. L. Ruffner, administrator, the two being one and the same person; that by the decree enforcing said alleged lien said D. L. Ruffner was appointed special commissioner on the 28th day of June, 1876, to make sale of said lot, to satisfy the lien ascertained to exist in favor of said D. L. Ruffner, administrator *etc.;* that said D. L. Ruffner, as such special commissioner, on the 27th day of November, 1876, made sale of said lot under said decree, at which sale said D. L. Ruffner, as administrator as aforesaid, and B. H. Smith became the purchasers of said lot for the price of $700.00 less than one half the amount, which said Walker agreed to pay The Charleston Institute for same; that said lot brought at said sale less than one third of its value; that after applying the proceeds of said sale to the unpaid purchase-money amounting to $856.80 with interest added to June 28, 1876,.all the balance of said purchase-money having been paid by the plaintiff, Walker, there was still a considerable sum due on the purchase-money of said lot, for which a decree was taken against said Walker, which was afterwards paid by said Walker to said D. L. Ruffner, administrator as aforesaid, as shown by his receipt filed with the plaintiff's bill; that the said D. L. Ruffner in making sale of the said lot under the said decree was acting as the agent of plaintiff, and in purchasing or attempting to purchase the said lot at said sale and under the circumstances

the said Ruffner violated his duty as such agent and as an officer of the court, and that by so doing he committed a legal fraud upon plaintiff, and thereby prejudiced and injured him greatly ; that the said sale and purchase by said D. L. Ruffner under the circumstances aforesaid were fraudulent, illegal and void and could not divest the plaintiff of his interest in said lot.    And he prays, that said sale and the deed made in pursuance thereof may be set aside, cancelled and annulled, and that said lot may be again exposed to sale.

C. Q. Smith, A. Q. Smith, and Harry B. Smith answered plaintiff's bill stating, that they and the infant children of Caroline Q. Smith, to wit, Elsie, Isaac N. and Christopher T. Smith, were the sole devisees as to the property mentioned in the bill of Benjamin H. Smith, deceased, and they deny that the plaintiff, Walker, has ever paid in full for said property sold to him, and claim, that he still owes them, as such devisees, about $100.00 with interest thereon, as more fully set forth in the answer of C. C. Lewis, executor of B. H. Smith, filed therein.  They adopt the answer of Maria McFarland's administrator, and they deny, that plaintiff's claim has any equity as against them now, after so many years have elapsed, and that the acts and acquiescence of plaintiff himself in the proceedings claimed to have prejudiced him refute any such pretensions or claims.

C. C. Lewis, as the executor of the last will and testament of B. H. Smith deceased, also answered said bill, exhibiting a copy of said Smith's will and claims, that, in the event the sale aforesaid to his decedent be set aside, the court should decree him, as such executor, the sum of $91.66 with interest from November 27, 1876, being the balance due the estate of said B. H. Smith, there being that amount still unpaid by said Walker on the original purchase-money.

The devisees of said B. H. Smith also file a petition in said cause showing, how said balance of purchase-money still remains unpaid by said Walker ; alleging that said sale complained of in the bill was proper, fair, and just, and the rights of no one injured thereby ; and that by plaintiff's own admissions of payment by virtue of the sale aforesaid he acquiesced in said sale, and it is now too late for him to set up a claim so stale and unjust ; and that they may be decreed the owners

of the interests so purchased in said lot and confirmed to said B. H. Smith by the decree of December 20, 1876.

The infants, Elsie Smith, Isaac N. Smith and Christopher T. Smith, answered by guardian *ad litem.* Said Ruffner demurred to said bill, and the demurrer was overruled.

The defendant David L. Ruffner, administrator of Maria McFarland, deceased, also answered said bill giving a full statement of the matters, out of which said litigation originated, including the original sale to and contract with the plaintiff, Henry S. Walker, and the manner, in which he, as the administrator of Maria McFarland, came into the possession of the claims against said Walker, under which he sought to enforce the vendor's lien, as to the time a decree was obtained for the sale of said lot, and the terms and conditions of said sale; averring that said property was advertised and offered for sale by him first on the 12th day of October, 1876, that the sale was postponed at the request of the plaintiff, Walker, until the 11th day of November, 1876, when the property was again offered for sale, and again the sale was postponed to the 25th of November on account of want of bidders, on which day said property was again offered for sale, and, respondent having received another message from said Walker to go on with the sale, the crying of bids was continued for a while, when said sale was again postponed until the 27th day of November, 1876, on which day said sale was concluded and the property was struck off to B. H. Smith and D. L. Ruffner, administrator of M. MacFarland, they being the highest bidders for the same, at the price of $700.00, which, he claims, was the most that could be obtained for said lot; and that on the 20th day of December, 1876, the court having received the report of said sale confirmed the same without exception; and that, the proceeds of said sale not being sufficient to satisfy the decree of June 28, 1876, the court gave the administrator of said M. McFarland a judgment for the unsatisfied balance, amounting to $382.40 with interest from the 27th day of November, 1876, on which judgment execution was issued and returned, "No property found," and said judgment was docketed according to law; that said suit in equity was instituted by the plaintiff, Walker, nine years and ten and a half months after the decree was

rendered in said cause confirming said sale; and that the bringing of said suit by said plaintiff, Walker, was the first intimation he had received from said plaintiff, that he had ceased to acquiesce in everything connected with said sale. He also states, that he at once took possession of said lot and has been in quiet possession thereof ever since up to the institution of said suit; that he has paid all the taxes assessed upon said lot during that time and has also paid the delinquent taxes for 1875 and 1876, which were unpaid by Walker, and for which the auditor had placed the lot in the hands of the sheriff of Kanawha county for sale in the fall of 1877. He also avers that $700.00 was a full price for the lot, at the time it was sold, in November, 1876. The respondent then proceeds to discuss the rise and fall of real estate in the city of Charleston its causes and consequences. He alleges, that said lot in 1873 was assessed on the landbooks at $178.00, and in 1875 at $400.00; that the lot at the time of the sale was low and wet, and that in 1881 he constructed a subterranean drain, at considerable expense, the entire length of said lot, about 133 feet, and had dirt hauled, and filled up said lot, thereby adding greatly to its value; that in October, 1881, the plaintiff's agent or attorney accosted the respondent on the street and asked him for how much he would discount the judgment, which he held against plaintiff under the decree of December 20, 1876; that he declined, inasmuch as he was a fiduciary, to discount said judgment, and a few days afterwards, on the 28th of October, 1881, said Walker voluntarily paid to respondent the whole of said judgment, thereby acquiescing in and admitting the validity not only of said decree but of all the proceedings leading to the same. He also avers, that owing to many causes, which he enumerates, said lot has greatly enhanced in value, and for this reason, he alleges, the plaintiff has set up his claim. He denies, that he was acting as the agent of plaintiff in making said sale, and claims, that he was acting as the agent of the County Court, and that if said Walker was wronged by the court he should have excepted to its action, and his remedy would have been by appeal. In conclusion he denies, that he has been guilty of any legal fraud; that if there was any error it was merely

one of form,—a technical and not a substantial one; that he was the holder without interest of a naked legal title for and in behalf of the heirs of Maria McFarland; that, if there was any legal fraud, the plaintiff has waived and lost his right to be heard in a court of equity by reason of his gross laches and negligence for nearly ten years; that plaintiff is estopped from setting up any claim to said lot by silently standing by and permitting respondent to expend money in making improvements on said lot and by voluntarily performing the judgment awarded to plaintiff by the final decree confirming the sale of said lot; that plaintiff's only remedy was by appeal, which was barred in five years, *etc.*

Upon this state of pleadings said cause came on to be heard on the 7th day of July, 1888, upon the depositions taken in the cause and the general replications to said answers; and upon consideration thereof the court below held, that the plaintiff was entitled to the relief prayed for and decreed, that the sale of said lot made in the suit of D. L. Ruffner, administrator of Maria MacFarland, against Henry S. Walker and others, lately pending in the County Court of Kanawha county on the chancery side thereof by special commissioner D. L. Ruffner on the 27th day of November, 1876, and also the decree of the 20th of December, 1876, confirming said sale, and also the deed made to said purchaser by W. A. Quarrier, special commissioner, dated December 20, 1876, be, and the same are all hereby set aside, vacated, and annulled, and that the plaintiff be allowed to pay the purchase-money due from him on said lot to the parties thereto entitled together with the taxes, which had been paid by the purchasers on said lots, and the costs of the permanent improvements made by them thereon, less the rents received by them therefrom; and that said cause be referred to a commissioner to ascertain and report (1) the amount of purchase-money due from the said plaintiff on said lot, and to whom due; (2) the taxes which have been paid by the purchasers thereon with interest; (3) the cost and value of any permanent improvements made by the purchasers on said lot with interest; (4) the rents and profits received by the purchasers from said lot with interest, *etc.*

From this decree the defendants in said chancery suit,

with the exception of the Charleston Institute, obtained an appeal to this court.

It seems to be conceded on all hands, that David L. Ruffner, who, as administrator of the estate of Maria McFarland deceased, was the plaintiff in said chancery suit, which was prosecuted in the County Court of Kanawha county, was the same David L. Ruffner, who was appointed to make sale of said lot of land in the bill mentioned, and who at said sale became the purchaser of the greater portion of said lot in the same capacity, as that in which he acted when prosecuting said suit. It is contended by counsel for the appellee, that such a sale is not simply voidable but absolutely void. I do not however consider that position to be in accord with the weight of authority either in the state of Virginia or in this state.

In the case of *Howery* v. *Helm*, 20 Gratt. 1, the second point of the syllabus reads as follows : " When the commissioner appointed by a decree in a partition suit to sell the land becomes himself the purchaser, the purchase is voidable at the election of any party interested in the land sold. And the law is the same where the purchase is made nominally by a third person, who is reported by the commissioner to the court as the purchaser, but who really purchased for the commissioner, and conveyed the land to him accordingly, after the purchase, as reported, had been confirmed.　*　*　* The commissioner by purchasing at his own sale did an act, which a court of equity treats as a fraud upon the parties interested."

In the case of *Newcomb* v. *Brooks*, 16 W. Va. 32 the court held as follows : "2. A purchase by a fiduciary, while actually holding a fiduciary relation, of the trust property, either of himself, or of the party to whom he holds such fiduciary relation, is voidable at the option of the party to whom he stands in such a relation, although the fiduciary may have given an adequate price for the property, and gained no advantage whatever."　*　*　* "10. But when such sales are sought to be avoided, the suit for the purpose must be brought in a reasonable time, though the property remains in the hands of the fiduciary." GREEN, J., in delivering the opinion of the court in that case, (page 69,)

says : "The general rule we have laid down, that a fiduciary will not be permitted to buy the trust property, even when the purchase is fair, and the price adequate, and that the *cestui que trust,* or person bearing a similar relation, may, at his option, set aside such a sale, applies as strongly to a public sale by a fiduciary as to a private sale ; nor will the fact that the sale is made under an adverse proceeding, and at a judicial sale, make any difference. He can with no more propriety purchase at such a sale than at one made by himself." (Quoting numerous authorities.) "The reason of this is obvious, for if the purchaser bears such a relation to the person interested in the property to be sold as to impose on him the duty of making the property bring the highest price possible, this duty is as incumbent on him when the property is sold under an order of the court, or by any other person, or at any other sale, as it is when made by himself, either privately or publicly, and therefore he can not be permitted to put himself in a position in which it is his interest that the property should bring the least sum possible."

In the case of *Winans* v. *Winans,* 22 W. Va. 678, it is held : "When a commissioner appointed by a decree, in a suit in equity to sell land, becomes himself the purchaser, the purchase is voidable at the election of any party interested in the land sold."

In the case of *Ayers* v. *Blair,* 26 W. Va. 559, it is held : "That the same person can not occupy the antagonistic positions of seller and purchaser of the same subject," *etc.*

From these authorities and many others that might be referred to, the law seems clear, that a sale made, as this one was, by a special commissioner, who became the purchaser of a large portion of the property sold at his own sale, is clearly voidable in a court of equity. Upon that question I have arrived at my conclusions with very little hesitation ; but there is another question in this cause, which is involved in more serious difficulty, and that is whether the plaintiff in this cause has not been guilty of such laches in the assertion of his demands, that what he might once have obtained without hesitancy from the court, has by the lapse of time, the change of circumstances, the alteration and enhancement in value of the property sold, and the death of one of the

purchasers, a party to the suit, been brought within that rule of equity which prevails in that class of cases "involving the specific execution or rescission of contracts for fraud, or some infirmity or defect, of which the plaintiff was fully apprised, but refused to act, until subsequent events showed, that it might be to his advantage to act; cases in which he was silent when it was his duty to have spoken or acted and will not be heard, when he should be silent."

The appellee, Walker, in his bill offers no excuse whatever for his delay of nearly ten years in instituting his suit to set aside the sale made by said Ruffner and the deed made in pursuance thereof. He was a party to the suit, in which said sale was made, and was fully cognizant of the fact, that said Ruffner had been appointed a special commissioner to make said sale, and when the property was exposed for sale, the sale seems to have been postponed on three different occasions,—once at least by the request of said Walker to suit his convenience; and the decree, which confirmed said sale, and gave a judgment over against said Walker for $382.40, the balance of the debt due said Ruffner, as administrator, on the original purchase-money of said lot, which he afterwards voluntarily paid, also directed William A. Quarrier, as special commissioner, to make a deed to said Ruffner, as administrator, for the largest portion of said lot. Said Walker by paying said judgment thus performed and acquiesced in a part of the decree, which estops him from saying, that he did not have full notice of the said decree and its contents. At the time of said sale and for some time thereafter said lot was low and wet; and Dr. Wagner, who attended said sale for the purpose of bidding on the lot but was unwilling to bid more than $500.00, although the lot adjoined his residence, says the property is now worth $60.00 a front foot, or about $4,000.00. Other witnesses say that $700.00 was a fair price for the lot at the time it was sold. The evidence shows, that the property has been improved by ditching and filling, and its enhancement in value has been occasioned also by many causes, which have increased the value of property in the city of Charleston, and by the erection of the United States custom-house, and other buildings in the immediate vicinity, of which the said Walker re-

siding in said city had full notice. In addition to these facts Benjamin H. Smith, who was a purchaser of a portion of said lot at said sale, about the time of or shortly after the institution of this suit departed this life having devised the portion of said lot purchased at the sale by him to Caroline Q. Smith, Harry B. Smith, Alexander Q. Smith, Elsie, Isaac N., and Christopher T.,—the last three being infants,—as a part of his real estate; and, if said sale should be set aside, it would necessarily be set aside entirely, thus disarranging the final disposition made by said B. H. Smith of his real estate, which would have been avoided but for the delays of said Walker in instituting his suit.

In the case of *Trader* v. *Jarvis*, 23 W. Va., this Court, on page 108, says: "Delay in the assertion of a right, unless satisfactorily explained, even where it does not constitute a positive statutory bar, operates in a court of equity as an evidence of assent, acquiescence, or waiver, and especially is such the rule in suits to set aside transactions on account of fraud or infancy. A court of equity, which is never active in relief against stale demands, will always refuse relief where the party has slept upon his right, and acquiesced, for a great length of time. Nothing can call into activity this court but conscience, good faith, and reasonable diligence. Where these are wanting, the court is passive, and does nothing. Laches and neglect are always discountenanced,"—referring to *Smith* v. *Clay*, 2 Amb. 645; *Doggett* v. *Helm*, 17 Gratt. 96.

In the case of *Pusey* vs. *Gardner*, 21 W. Va. 470, sixth point of syllabus, this court holds: "Even where there is no absolute bar from the lapse of time or by the statute of limitations, it is a principle of courts of equity not to take cognizance of an equitable claim after a great lapse of time, and where, from the death of parties and witnesses, there is danger of doing injustice, and there can no longer be a safe determination of the controversy."

In the case of *Harwood* v. *Railroad Co.*, 17 Wall. 81, upon a bill filed to set aside as fraudulent completed judicial proceedings regular on their face, the court says, Justice HUNT delivering the opinion: "We are of the opinion, also, that there has been too great delay in initiating this suit, and that

no sufficient excuse is given for it. The sale was made five years before the commencement of this suit, and it is fairly to be inferred from the bill that the plaintiffs were aware of the proceedings as they progressed. Their knowledge of the mortgage sale is expressly admitted. * * * They do not allege when they acquired the knowledge, nor give a satisfactory reason why it was not sooner obtained. For aught that appears, they have slept upon their knowledge for several years. Without reference to any statute of limitations, the courts have adopted the principle that the delay which will defeat a recovery must depend upon the particular circumstances of each case. This case does not show a sufficient degree of diligence to justify the overthrow of a decree of foreclosure, under which new rights and interests must have arisen."

When said sale was made in November, 1876, neither the plaintiff, Walker, nor any one for him seemed disposed to bid upon the said lot, although the most ample opportunity was afforded him; and after repeated efforts were made to make sale of said lot, B. H. Smith and the representative of the estate of Maria McFarland, who held the vendor's lien upon said lot, concluded to invest in the same in proportion to the amounts respectively held by them as liens thereon, and, to effect that purpose, bid in the property at $700.00, which, the proof shows, was a fair price at the time of the sale. If said sale was fraudulent and void, the facts, which made it so, existed in December, 1876, when it was confirmed without exception or objection on the part of plaintiff, who was before the court with full knowledge of the entire proceeding. If he had spoken then or within a reasonable time thereafter, instead of waiting until February, 1887, to file his bill, a court of equity would have lent a willing ear to his complaint; but under all the circumstances disclosed by the record and the evidence in this cause I am of the opinion, that after so much delay and so many changes it was error in the court below to entertain the plaintiff's bill or decree in his favor.

The decree complained of must be reversed, and the bill dismissed, and the appellee must pay the costs of this appeal and the costs of the Circuit Court.

Reversed.　Dismissed.