# CHARLESTON.

## Swann *v.* Thayer *et al.*

Submitted January 14, 1892. Decided February 3, 1892.

1. Title—Color of Title—Adversary Possession.

    Color of title, for the purpose of adverse possession under the statute of limitations as to land, is that which has the semblance or appearance of title, legal or equitable, but which is in fact no title. Any written instrument, however defective or imperfect, no matter from what cause invalid, purporting to pass or convey title to land, which defines the extent of the claim under it, is color of title.

2. Title—Color of Title—Trusts and Trustees

    A deed purporting to convey land in fee under a void sale, made under a deed of trust, by a trustee having no legal authority, gives color of title.

3. Title—Landlord and Tenant—Adversary Possession.

    Though a tenant can not deny his landlord's title while the relation of landlord and tenant exists, yet if the tenant accept a deed from another, purporting to convey the land to him in fee, and later conveys it in fee to another, and both he and his alienee claim the land in their own right under such conveyances, and

the landlord has knowledge of such conveyances and claim, possession by such tenant and his alienee after such knowledge on the part of the landlord for the period fixed by the statute of limitations will be adversary, and will bar the landlord's right.

4. TITLE—TRUSTS AND TRUSTEES.

A creditor secured by a deed of trust purchases the land at a void sale under such deed, and the trustee makes him a deed purporting to convey it in fee, and such purchaser afterward by deed conveys the land in fee to another, and such purchaser and his alienee hold actual possession, claiming the land in their own right, for the period of the statute of limitations. Such possession gives title and bars the right of the grantor in such deed of trust, and he can not maintain a bill to redeem and recover the land.

5. TITLE—LACHES.

The facts stated in the last section with the further fact that for at least seventeen years before suit such grantor knew of such sale, conveyances, possession, and claim by such purchaser and his alienee, would, by reason of laches and staleness, defeat a suit in equity, brought to set aside such sale and conveyances, and redeem and recover the land, even if the statute of limitations did not bar it.

*J. S. Swann* and *O. Johnson* for appellant cited 24 W. Va. 238, 243, 244; 2 W. Va. 756; 15 Am. Dec. 156; 22 Am. Dec. 178, 179; 1 Am. Dec. 468; 16 Am. Dec. 212; 10 Am. Dec. 491.

*Knight & Couch* for appellees cited 21 W. Va. 601; Code (1891) c. 104, s. 12; 20 W. Va. 629; Id. 398.

BRANNON, JUDGE:

T. B. Swann, in March, 1889, filed his bill in the Circuit Court of Kanawha county against William T. Thayer and others, and, the bill having been dismissed upon demurrer, he appealed to this Court. The bill states, in effect, that on April 23, 1861, he executed to Quarrier, trustee, a deed conveying two acres of land in Charleston, besides other lands, to secure to J. D. Young three thousand dollars payable three years after that date; that, anticipating that in the event of war he would be driven from home, and the house burned or confiscated, he said to J. D. Young that they were drifting into a great war, and he desired to put his house and lot into Young's hands to take care of until

the war should end, and desired him to move into it, and hold it free of rent until his return ; that Young agreed to do so; that he, Swann, joined the Confederate forces, left Charleston, went within the Confederate lines, and remained absent until the close of the war, returning to Charleston May 13, 1865 ; that Young moved upon the property in 1861 ; that the trustee, Quarrier, having died, on Young's motion on April 12, 1864, the Circuit Court appointed W. L. Hindman trustee under said deed of trust, in his stead, without notice to Swann ; that under a sale of said two acres by said Hindman as such trustee under said trust, Hindman, on June 11, 1864, executed to said Young a deed for said land, which was recorded July 25, 1864; that by deed of September 21, 1867, J. D. Young conveyed a part of said land to J. M. Young as a gift, and by deed of September 19, 1867, conveyed the residue to John Slack, Jr., as a gift, both deeds being without warranty; and Slack, by deed of September 25, 1867, conveyed to William T. Thayer the part so conveyed to Slack; that Thayer, against the plaintiff's protest, had made permanent improvements, costing eight thousand dollars; that J. D. Young continued to reside upon said property until he conveyed to J. M. Young and John Slack, Jr. ; that the order substituting Hindman as trustee, and his sale and his deed for the property to J. D. Young, were void, because when made, he, Swann, was a soldier in the Confederate service, within the Confederate military lines, and prevented by war from paying the debt secured by the deed of trust, and had no notice of such proceedings ; that these facts were all known to both the Youngs and Slack and Thayer and Hindman ; that J. D. Young became tenant to him, Swann, and so were his aliences; that on account of the said void proceedings said J. D. Young should be regarded as holding the property under said trust-deed in trust for him, Swann, and so would his alienees; that J. D. Young died in 1870; that he, Swann, in 1871, brought suit in chancery against all these defendants to recover said two acres of land, and filed his *lis pendens*, but, "on account of the times" *etc.*, he was advised to let it abate, and wait upon events to restore reason *etc.*, to the courts from the result of the civil

war. He prayed that the court set aside the deed from Hindman, trustee, to J. D. Young as null and void, as also the deed from said Young to Slack, and the deed from Slack to Thayer, and set aside as void the order substituting said trustee ; that he be allowed to redeem said property ; and that the rents and profits be credited to him, less taxes ; and averred his willingness to pay for improvements.

Is the plaintiff's right barred by the statute of limitations ? Young and those claiming under him had been in possession since June 11, 1864, the date of the deed from the trustee to Young, up to March, 1889, the commencement of this suit—nearly twenty five years. The arguments against the application of the statute of limitation present the following points :

1. The order of the Circuit Court of Kanawha substituting Hindman as trustee under the deed of trust in place of Quarrier, the first trustee, is void, conferring no power on Hindman, and therefore his sale under the deed of trust and his deed to the purchaser are void and pass no title. As Swann, the grantor in the deed of trust, was entitled under the statute to notice of the motion to substitute a trustee, and was then within the Confederate lines in war, the order substituting a trustee was void. The deed of the substituted trustee conferred no legal title—no title.

But to confer title under the statute of limitations it is not necessary that the writing under which the person claims shall be valid, for an invalid or void instrument will constitute color of title sufficient to confer title under the statute. I think the following statement in Hutchinson's Land Titles, is accurate and good law : " § 389, Color of title is that which has the semblance of title, but which in fact is no title ; and is anything in writing, however defective or imperfect, purporting to convey title to the land, and which defines the extent of the claim." * * § 392 : "A deed or writing which purports to convey described land and pass a title gives color of title, no matter in what its invalidity consists. It is sufficient if the purpose to hold under the title accompanied the adverse occupancy." Many authorities are cited by Mr. Hutchinson for the propositions quoted from his text.

7

In *Coocy* v. *Porter*, 22 W. Va. 120, it is held that it is the fact that the party relying on the statute claims the property as his own, "not the goodness of his title, that makes the possession adverse. His claim may be founded on a defective or even void deed or paper as well as on a valid instrument."

In *Core* v. *Faupel*, 24 W. Va. 247, SNYDER, J. in delivering the opinion stated the law as follows: "The courts have concurred, it is believed without exception (certainly such is the law in Virginia and this State) that any paper which has the appearance of a title, although it is not in fact such, may be color of title. It has been decided by our courts to be a good or bad, a legal or an equitable title, *Adams* v. *Alkire*, 20 W. Va. 480; *Shanks* v. *Lancaster*, 5 Gratt. 110. The authorities seem conclusive that a claim to land under a conveyance, however inadequate to carry the true title, and however incompetent might have been the power of the grantor in such conveyance to pass the title to the subject thereof, yet a claim asserted under the provisions of such deed is strictly under a color of title, and one which will draw to the possession of the grantor (grantee) the protection of the statute of limitations, other requisites of those statutes being complied with."

Here we find a deed of trust, a sale, and a conveyance under it purporting to convey a fee-simple, and twenty five years' possession under it; and I can not see why, under the principles above stated, there is not a case of adverse possession, though that proceeding was in fact void. The chief purpose of an instrument used as color of title is to mark the extent of the party's claim; but such instrument, until the contrary be shown, purporting to vest a right in the occupant, implies a claim of title under it when accompanied by actual possession, and is *prima facie* adverse. *Ketchum* v. *Spurlock*, 34 W. Va. 597 (12 S. E. Rep. 832); Hutch. Land Tit. § 390; section 1 of syllabus in *Core* v. *Faupel, supra.*

The statute of limitations is one of peace and repose, very salutary in effect. It enjoins reasonable diligence, and it should not be frittered away by too much refinement. It seems to me that it would be a defeat of its manifest design to refuse to apply it in this case.

In *Chickering* v. *Failes*, 26 Ill. 508, a void decree of foreclosure, though not barring an equity of redemption, was held sufficient claim and color of title under the statute, and the court said, after a foreclosure or an effort to foreclose by decree or deed purporting to have that effect, the presumption then arises that all acts done in reference to the property are done under claim of ownership, and referred to his color of title, and, after the period of the statute, barred a redemption. So was held a deed under a void sale (*Laflin* v. *Herrington*, 16 Ill. 301); a deed of a mortgagee before entry or foreclosure (*Stevens* v. *Brooks*, 24 Wis. 326); a void patent for land (*Logan* v. *Jelks*, 34 Ark. 547); a deed under a decree void for want of jurisdiction if deed imports title (*Welborn* v. *Anderson*, 37 Miss. 162; *Huls* v. *Buntin*, 47 Ill. 396; *Whiteside* v. *Singleton*, Meigs, 207); a guardian's deed under a void judicial sale (*Molton* v. *Henderson*, 62 Ala. 426); an administrator's deed under a will without power of sale or without authority (*Crispen* v. *Hannaran*, 50 Mo. 536; *Riggs* v. *Fuller*, 54 Ala. 141). See *Pillow* v. *Roberts,* 13 How. 472; *Wright* v. *Mattison*, 18 How. 50; *Creekmur* v. *Creekmur*, 75 Va. 530; Tyler, Ej. 872.

2. A second point made against the defence under the statute is that Young was a tenant to Swann. When Swann was about departing from home to take part in the civil war he requested Young to move upon the property, and take care of it until his return, to which Young assented, and took possession in the fall of 1861. Swann returned May 13, 1865. Unquestionably Young thus became Swann's tenant, and, if there were no further facts, his possession would not be adverse. But on June 11, 1864, Young purchased under a sale made under the trust-deed, took a deed for an absolute estate, had it recorded, and in 1867 conveyed the property in fee to others, thus plainly asserting on the part both of Young and his alienees that they owned the fee in their own right. It is laid down in Taylor's Landlord & Tenant, § 522, that, in some of the States, if a tenant, even by mere words, distinctly repudiates the lessor's title, and asserts one in himself, and this is made known to the landlord, the tenant's holding would become adverse, and ripen into a fee by adverse possession.

In the United States Supreme Court it has been held that, if the tenant disclaims the tenure, and claims the fee in his own right, of which the landlord has notice, the relation of landlord and tenant is put an end to. *Walden* v. *Bodley*, 14 Pet. 156. And in *Williams* v. *Watkins*, 3 Pet. 44, and *Peyton* v. *Stith*, 5 Pet. 485, it was held that when a tenant disclaims to hold under his lease, and the landlord has notice of it, the tenant's possession is adverse, and the statute will run from at latest the time when the landlord has notice. From the time the landlord has notice that tenant claims in his own right the relation ceases. *Campbell* v. *Fetterman*, 20 W. Va. 398.

In *Allen* v. *Paul*, 24 Gratt. 332, it is admitted that if the tenant assert an adverse right to the premises, with notice to the landlord, the possession assumes an adverse character.

In *Voss* v. *King*, 33 W. Va. 236 (10 S. E. Rep. 402) it is held that a tenant who, while in possession, accepts a lease from another, may disclaim and bring home notice thereof to the former landlord, and set up adverse possession, without surrendering the premises.

In *Genin* v. *Ingersoll*, 2 W. Va. 558, it is held that to enable a tenant to set up adverse claim he must either restore possession to the landlord, or bring home notice to him of adverse claim.

That the plaintiff knew of this assertion of a right to the fee by Young and his alienees is apparent from the whole frame and spirit of the bill, particularly from the fact therein stated that in 1871 the plaintiff brought a suit against all the defendants to recover the property, which he suffered to abate. Hence seventeen or eighteen years elapsed after the plaintiff knew of the hostile claim of the defendants before he brought this suit.

3. A third reason against the application of the statute of limitation as suggested is that the title claimed by defendants is in privity with the title of the plaintiff, and not under a different title. The right claimed is in privity in estate; that is, derivatively from Swann's title, but not in subordination to or in recognition of it as a continuing, subsisting title. The claim is in antagonism to the plaintiff's

right, and on the theory that his title vested in defendants by operation of the sale. I do not conceive that the fact, that a party may have derived his title from a former owner, can alone prevent his possession from having the quality of adverseness. If so, one claiming under a deed purporting to convey the fee would not be holding adversely to his grantor; but the reverse is universally held.

In *Clarke* v. *McClure*, 10 Gratt. 305, a principle is laid down which I regard a proper and well-put test by which to determine whether the holding is adverse: "Adverse possession depends upon the intention with which the possession was taken and held. Whenever the act itself imports that there is a superior title in another, by whose permission, and in subordination to whose still continuing and subsisting title, the entry is made, such entry can not be adverse to the owner of the legal title; and such possession so commencing can not be converted into an adverse possession, but, by disclaimer, the assertion of an adverse title and notice."

In this case the purchase under the sale, the taking a deed, the conveyance to others of the property in fee, at once disclaim the tenancy, and negative any idea that Young yet regarded Swann's title as still continuing.

4. It is said that Young, on account of being a creditor under the trust-deed, while in possession must be regarded as a trustee. In the case of an ordinary mortgage the conveyance of title is direct to the creditor, who, on non-payment, enters into possession, and in equity is regarded as trustee holding in harmony with the mortgagor's title. It is rarely, perhaps never, the case that the creditor takes possession under our deeds of trust conveying title to a trustee. It is not settled what is the character of such possession by a creditor; but assimilating it, as likely it should be, to that of a mortgagee, his possession would not be adverse. But if we thus make him by construction a trustee, when once he clearly repudiates such trust character, claims the property in his own right, and of this the debtor is aware, the statute runs in his favor. Perry, Trusts, §§ 863, 864: *Elmendorf* v. *Taylor*, 10 Wheat. 152; Hutch. Land Tit. § 354; 2 Story, Eq. Jur. § 1520.

In *Jones* v. *Lemon*, 26 W. Va. 629, it is held that, even in direct and express trusts, if the trustee repudiates the trust clearly by acts or words, and claims the estate as his own, and the *cestui que trust* so knew it as to call upon him to assert his right, the statute runs from the time·that such knowledge is brought home to him.

But the facts shown in the bill fairly negative the idea that Young was ever in possession under the trust because of his right as creditor. He held for a time as tenant under the arrangement above stated, and then as purchaser under the sale. But concede that by reason of the relations of the parties and the deed of trust, and the voidness of the sale, and the privity in estate, the statute of limitations, which must have an adverse possession for its basis, does not apply. Then laches is a bar. As held in the United States Supreme Court: "A bill is bad on demurrer when it appears therefrom that there have been unreasonable delay and laches on the part of complainant, or those under whom he claims, in asserting the right which he seeks." The court says: "It has been a recognized doctrine of courts of equity, from the very beginning of their jurisdiction, to withhold relief from those who have delayed for an unreasonable length of time in asserting their claims." *Elmendorf* v. *Taylor*, 10 Wheat. 152 ; *Piatt* v. *Vattier*, 9 Pet. 405 ; *Maxwell* v. *Kennedy*, 8 How. 210 ; *Badger* v. *Badger*, 2 Wall. 87; 2 Story, Eq. Jur. § 1520.

In *Wagner* v. *Baird*, 7 How. 234, it was said that long acquiescence by parties out of possession is productive of much hardship and injustice to others, and can not be excused except by showing some actual hindrance or impediment, caused by the fraud or concealment of the party in possession, which will appeal to the conscience of the chancellor.

In *Trader* v. *Jaris*, 23 W. Va. 100, this Court held that delay in asserting a right, even where it is not a statutory bar, operates in equity as evidence of assent, acquiescence, and waiver; that equity is never active in relief in case of stale demands, and will always refuse it where the party has slept upon his right, and acquiesced for a great length of time ; that nothing can call equity into activity but con-

science, good faith, and reasonable diligence, and, where these are wanting, the court is passive, and does nothing. See *Whittaker* v. *Improvement Co.*, 34 W. Va. 217 (12 S. E. Rep. 507); *Walker* v. *Ruffner*, 32 W. Va. 297 (9 S. E. Rep. 215); *Pusey* v. *Gardner*, 21 W. Va. 469; *Harwood* v. *Railroad Co.*, 17 Wall. 81; *Doggett* v. *Helm*, 17 Gratt. 96.

The appellant returned from the war to Charleston, May 13, 1865, where he could see the property, and know of possession of it daily, where, open for inspection, were the records showing the character of the claims of his adversaries. The whole cast of his bill shows he was fully aware of the situation or *status* of things touching the property. He brought a suit like this in 1871, and allowed it to abate for no adequate reason. This at once shows his knowledge of the facts of the case, and also tends to show an abandonment of his claim and acquiescence. He slept on his rights twenty four years. What stronger evidence could be required of waiver or acquiescence short of an express release? And the silence is almost tantamount to a release.

The bill seeks to excuse the plaintiff because he could not take the suitor's test oath. The act of March 1, 1866, (chapter 132) excused a plaintiff from that test oath until the defendant should take and file it. The bill does not allege that the defendants could take it. The plaintiff seeks to set up a disability without alleging the facts essential to bring him under it. Hence that is not on the face of the bill an excuse.

A prominent contention of the plaintiff is that a deed of trust is in effect a mortgage; that the possession of the mortgage after forfeiture is not adverse to the mortgageor; that he has twenty years in which to redeem by payment; that the possession by Young and those deriving title under him is to be regarded as that of a mortgagee, and subject to the right of redemption for twenty years, notwithstanding the sale and conveyance by the trustee under the deed of trust, because they are void, and leave the case as though they had never taken place.

Now, in the first place, that theory ignores the sale and conveyance under it for all purposes; whereas, I hold that, while void, they have an effect, especially when we add the

fact of conveyances to Slack and Thayer; that is, aside from their constituting color of title under the statute of limitation, they are a colorable foreclosure of the mortgage forming the basis of a hostile claim by the purchaser such as to compel the plaintiff not to wait twenty years as on an undisputed right of redemption, but to call upon him to use diligence, so as to avoid the defence of laches. It is not the case of a simple right of redemption, unaffected by disclaimer and claim by the party in his own right, as free from a right of redemption.

This case is similar in nature to that of *Bargamin* v. *Clarke*, 20 Gratt. 544. There a lot was conveyed in trust to secure debts. The trustee, who was also the executor of a creditor, took possession, and later leased it for eight years. The heirs of the grantor sued the heirs of the trustee for the lot, alleging that he took and held possession as trustee under the deed, and that his heirs held under the trust. The possession was twenty eight years, and the court held the suit to be barred. There was no sale under the trust-deed and taking a deed in fee, as in this case, and no disclaimer to hold as trustee; but lapse of time was held a bar under the doctrine of laches. Counsel for appellant admits that if he waited twenty years he would be barred; but he would start the twenty years from February 6, 1873, by reason of the act of that date, excluding the time from February 28, 1865, to February 6, 1873, in favor of those who could not take the suitor's oath, in computing the time at bar. But, as shown above, the act of March 1, 1866, did not require a plaintiff to take it, unless the defendant took it; and it does not appear that the defendants could take the oath, or that it was in fact an impediment to a suit by the plaintiff. Young, the purchaser under the trust sale, died in 1870. What showing he might make, if alive, in defence of his alienees, we do not know; but it is an additional circumstance against relief after so long a time.

DECREE AFFIRMED.