# CHARLESTON.

## BILL *v.* SCHILLING *et al.*

Submitted February 2, 1894.—Decided March 24, 1894.

1. LACHES—JUDICIAL SALE—FRAUD.

　　Where F. conveyed a tract of land to C., reserving a vendor's lien for a portion of the purchase-money, and afterwards C. becoming involved conveyed said tract to B. and W., two of his sons-in-law, and died, and after a time F. brought a suit in equity to enforce his vendor's lien, and about the same time a creditors' bill was filed by M. against the estate of C., B. and W. were made parties defendant to both of said suits, and appeared and answered. Shortly after filing his answers said B. left the county without employing an attorney or agent and remained absent part of the time from the state and the United States. More than eighteen years after a sale of said land was made and confirmed, said B. filed a bill attacking said sale and the title acquired thereunder as fraudulent, claiming that he had discovered the fraud by an examination of the record shortly before his suit was brought. *Held*, that his voluntary absence did not excuse his negligence, and that he was guilty of such laches as to prevent him from being heard in a court of equity. (p. 118.)

2. LACHES.

　　A court of equity, which is never active in relief against stale demands, will always refuse relief where the party has slept upon his right, and acquiesced for a great length of time. Nothing can call into activity this court but conscience, good faith and reasonable diligence; where these are wanting, the court is passive and does nothing. (p. 121.)

3. LACHES—AMENDMENT—PLEADING—REVERSAL.

　　Under section 12 of chapter 125 of the Code, the plaintiff may amend his bill at any time after the appearance of the defendant if substantial justice will be promoted thereby; but the judge of the Circuit Court has discretion to determine whether substantial justice will be promoted by such amendment, and, unless it appears affirmatively that the court erred in exercising such dis-

cretion, the decree denying the right to amend will not be reversed. (p. 123.)

4. LACHES—AMENDMENT—PLEADING.

Where the plaintiff is not entitled to the relief sought, by reason of laches in filing his original bill, he will not be allowed to amend his bill, unless it offers some legal excuse for the delay ; and especially is this the case if the amendment is not asked until the case has been submitted to the court, and a decision adverse to him has been announced. (p. 123.)

R. F. FLEMING for appellant, cited on the Statute of Limitation and Laches ; 24. W. Va. 594 and authorities there cited.

O. JOHNSON for appellee, cited 23 W. Va. 522 ; Id. 718 ; 18 W. Va. 286 ; 46 Fed. Rep. 280 ; 51 Fed. Rep. 493 ; 15 Pet. 93 ; 103 U. S. 756 ; 1 How. 189 ; 10 How. 348 ; 21 How. 493 ; 4 Wall. 232 ; 34 W. Va. 229 ; 12 Wall. 47 ; 13 Pet. 107 ; 102 U. S. 68 ; 107 U. S. 466 ; 5 W. Va. 50 ; 18 S. E. Rep. 379 ; 23 W. Va. 182 ; 20 W. Va. 265 ; 16 W. Va. 546 ; 11 W. Va. 249 ; 8 W. Va. 459 ; 17 S. E. Rep. 400 ; 30 W. Va. 273 ; 10 W. Va. 251 ; Code, c. 125, s. 12 ; 50 Am. Dec. 318 ; Id. 491 ; 84 Am. Dec. 582 ; 15 C. B. 597 ; 24 L. J. C. P. 100 ; 34 Tex. 125 ; 50 Ind. 259 ; 66 Ill. 112 ; 7 Am. Rep. 281 ; 35 W. Va. 754 ; 24 W. Va. 594; 2 Wall. 92 ; 6 Wheat. 481 ; 7 Wheat. 389 ; 21 N. Y. 936 ; Am. Dig. 1893, § 268 ; Am. Dig. 1892, § 402-5 ; Am. Dig. 1891, § 418-423 ; 6 Am. St. Rep. 44 ; 79 Am. Dec. 324; 2 Me. 147 ; 13 Mass. 304 ; 50 Mo. 152 ; 18 Tex. 446 ; 33 Vt. 431; 19 Johns. 95 ; 3 Head 540 ; 14 Gray 511 ; 15 Vt. 490; 17 Johns. 284; 15 Mass. 481 ; 1 Wheat. 236 ; 6 Pick. 316 ; 9 Conn. 34 ; 20 W. Va. 497 ; 25 W. Va. 751 ; 26 W. Va. 54 ; 27 W. Va. 468 ; 19 W. Va. 439 ; 3 W. Va. 536 ; 33 W. Va. 587 ; 3 Gratt. 672 ; 2 Bart. Ch'y Pr. 265 ; 3 Gratt. 13 ; 9 W. Va. 339.

ENGLISH, JUDGE :

This was a bill in equity filed in the Circuit Court of Roane county in the month of October, 1891, by E. L. Bill, against J. G. Schilling, William Woodyard, and M. W. Kidd.

The facts, which appear in the record, and which gave

rise to this suit, may be stated briefly as follows : Henry J. Fisher, who was the owner of about fourteen acres of land in and near the town of Spencer in said county, sold the same to Henry D. Chapman, and in the deed of conveyance for the same reserved a vendor's lien for a considerable portion of the purchase-money. On the 28th day of January, 1869, said Henry D. Chapman conveyed said fourteen acres of land to the plaintiff E. L. Bill and William Woodyard, two of his sons-in-law, retaining a vendor's lien to secure five hundred. dollars the residue of the purchase-money therefor. The said Fisher instituted a suit in equity against J. G. Schilling, who was then the administrator of the estate of said H. D. Chapman, deceased, and others, to enforce against said property the lien so held by him prior to the conveyance made by said Chapman to the plaintiff Bill and the defendant Woodyard. About the same time a creditor's bill was filed by one Morgan Marks, *etc.*, against J. G. Schilling, administrator of the estate of Henry D. Chapman, and others, for the purpose of subjecting said fourteen acre-tract of land and other tracts of land, belonging to the estate of said Henry D. Chapman, to the payment of his debts, and attacking said conveyance made by Henry D. Chapman to the plaintiff E. L. Bill and William Woodyard as having been made without valuable consideration, and with intent to hinder, delay, and defraud the creditors of said Chapman. The said E. L. Bill and William Woodyard were made parties defendant in both of said chancery suits and filed their answers to each of said bills, and on the 13th day of November, 1872, a decree was rendered in said case of *Fisher* v. *Schilling*, directing a sale of said fourteen acre tract of land to satisfy said vendor's lien, which with the costs and commissions at the day of sale amounted to one thousand two hundred and twenty eight dollars. Said tract of land was sold under said decree by George J. Walker, special commissioner, for the sum of two thousand four hundred and fifty dollars, M. W. Kidd, becoming the purchaser, and paying nine hundred and ninety eight dollars of the purchase-money in cash, and executing his note with William Woodyard and John G. Schilling, as surety, for the residue of said purchase-money.

Said sale was reported by said commissioner to the court and was confirmed by a decree rendered on the 3d day of September, 1873. Said suit of *Fisher* v. *Schilling*, was consolidated with said suit of *Morgan Marks, who sues, etc.* v. *J. G. Schilling, Adm'r, etc.*, and on the 1st day of December, 1883, a decree was rendered therein, on the face of which it appears, that upon the application of E. L. Bill and William Woodyard, vendees of Henry D. Chapman of the twelve acre-lot of land near the town of Spencer, praying that the note for one thousand four hundred and fifty dollars then in the possession of George J. Walker, special commissioner in the chancery cause of *Fisher* v. *Schilling,* given by M. W. Kidd, purchaser of said property, with William Woodyard and John G. Schilling as sureties upon the same, might be surrendered to them, the lien and claim of said Fisher having been paid off and discharged by the cash-payment received by said commissioner upon the sale of said property; and it appearing to the court that the judgments and liens against said Henry D. Chapman in his lifetime, existing prior to the execution and recordation of said deed from Henry D. Chapman to said Woodyard and Bill, had been paid off and discharged, and the said Bill and Woodyard being then willing to receive said note as and for the money and interest arising from the said sale after the payment of the debt and cost due said Fisher, it was ordered that said George J. Walker, special commissioner, do deliver to said William Woodyard and E. L. Bill the note for one thousand four hundred and fifty two dollars in discharge of the interest to and in the proceeds of the amount of the sale of said twelve acres of land made by said commissioner, which note was received in open court by William Woodyard from said commissioner, and the claim of said William Woodyard and E. L. Bill in the surplus proceeds of said tract of land was discharged by the receipt on their part of the note aforesaid.

The suit in equity brought by said E. L. Bill in October, 1891, as above stated, sought, among other things, to set aside the sales and deeds made thereunder with respect to the twelve acres of land (which description was intended to include the entire fourteen and a half acres) as fraudulent

and void as to the rights of the plaintiff therein ; and he prayed that he might have a decree for the undivided interest in said twelve acre-tract, conveyed to him and said William Woodyard by Henry D. Chapman on the 8th day of January, 1869, or that he might have a decree against the defendant John G. Schilling for the one half part or parcel of said twelve acres occupied by him under the partition thereof between said Schilling and the defendant Woodyard, and, in the event that he was not entitled to that, that he might be decreed the amount due him of the surplus proceeds of the sale of said twelve acre-tract, with interest, and that the vendor's lien reserved in the deed executed by said special commissioner might be declared valid and binding thereon, and enforced for his benefit.

The plaintiff in his bill relies upon the following alleged facts and circumstances to entitle him to the relief prayed for, to wit : That, on the 8th of January, 1869, Henry D. Chapman conveyed to him and the defendant William Woodyard said fourteen acres of land ; that a vendor's lien was reserved for five hundred dollars, the residue of the purchase-money ; that at that time Henry J. Fisher claimed to have a lien against said tract of land equal to or in excess of the unpaid purchase-money, for which said Chapman retained a lien in his. deed to himself and said Woodyard ; that.said Fisher instituted a suit to enforce his lien against said property, and before a decree was obtained, about February, 1871, he, plaintiff, removed from the county of Roane, and thereafter, until within the last one or two years, had no personal knowledge of or in relation to the proceedings had in said chancery cause brought by said Fisher, and had no adequate or reliable information respecting the several matters complained of until the 1st day of November, 1890 ; that, upon examination of the records of the Circuit Court of Roane county, he found that George J. Walker in September, 1873, acting as special commissioner under the authority of two certain decrees in said chancery cause of Fisher against Schilling, administrator, and others —one on the 13th day of November, 1872, and the other in March, 1873—sold the real estate aforesaid in two parcels

to satisfy the original liens held by said Fisher prior to the conveyance thereof to plaintiff and defendant Woodyard, and that sale was confirmed on the 3rd day of September, 1873; that by the said decree of November 13, 1872, the parcel of said land conveyed to plaintiff and defendant Woodyard, designated as the "Argebright property," and as containing two and a half acres, was to be sold for cash, and that so much only of the residue, or twelve acre-lot, should be sold as would be necessary to pay the small sum and costs decreed, and it is alleged that said twelve acre-lot was worth several thousand dollars in excess of the amount decreed against the same, and that said twelve acres were susceptible of advantageous partition and sale in parcels, and that a small parcel thereof could have been sold under said decree for sufficient to discharge the whole amount decreed against the same, and a large portion of said lot saved to plaintiff and defendant Woodyard under their deed from said Henry D. Chapman ; that said decrees appear to have been modified by consent of parties so as to direct a sale of said entire property, and it was sold for so much cash as would be necessary to pay the debt decreed and costs and the balance on a credit of twelve months, which sale was made by Commissioner Walker on the 1st day of September, 1873, the surplus amounting to one thousand four hundred and fifty two dollars ; and the plaintiff charges that said modification was not made with the consent of all the parties in interest, and that he did not consent thereto ; that he was not a resident of Roane county at the time ; that he was not present and was not consulted on the subject of such modification or sale, and did not authorize any one to give such consent on his part; that for said surplus of one thousand four hundred and fifty two dollars said Special Commissioner Walker, on the 1st day of September, 1873, took from M. W. Kidd, the purchaser, a note or bond, with William Woodyard and John G. Shilling securities, which fact was reported to the court by said special commissioner, and his action confirmed by the court, and said commissioner was directed to convey, and did convey, said parcel of land to the purchaser, M. W. Kidd, by deed dated the 16th day of June, 1881, retaining

a vendor's lien on the face of the deed for said sum of one thousand four hundred and fifty two dollars with interest from the 1st day of September, 1873; that while the plaintiff was a non-resident of the state, on the 1st day of December, 1883, the defendants, or some of them, moved and procured from the Circuit Court of Roane county the making and entering of a decree in the chancery cause of *Morgan Marks, who sues, etc. v. John G. Schilling, administrator of the estate of Henry D. Chapman, and others*, reciting among other things that the plaintiff and William Woodyard were entitled to said note or bond, and to said net surplus proceeds of sale, and that they were willing to receive the same, and that the court decreed and ordered that the said George J. Walker, special commissioner, should deliver to the plaintiff and said William Woodyard the note aforesaid, which order further recited that the said note was then and there in open court received by said William Woodyard from the said Commissioner Walker; that plaintiff had no knowledge of the making and entering of said last mentioned decree until after his return to the State of West Virginia, about the 18th of January, 1889, nor was he consulted in relation thereto, or represented by any counsel or agent upon the subject of the disposition or surrender of said note, and he charges that he has received nothing by reason of his ownership of the one half of said parcel of land, or his rights to one half of said net surplus proceeds of sale, and that, as to him, the said note of one thousand four hundred and fifty two dollars with interest, remains wholly unpaid, and that a lien therefor binds the said parcel of twelve acres of land, and that he is entitled to enforce said vendor's lien to secure the payment thereof; that the said M. W. Kidd bought in the said parcel of twelve acres at the sale so made by Special Commissioner Walker, not for himself alone, but for himself and the said John G. Schilling and William Woodyard (if not for them and plaintiff) and that they had actual notice of the plaintiff's rights in and to the same, and in and to said surplus proceeds of the sale thereof aforesaid, and that, by some arrangement between the said defendants, the said tract of land was then held in two separate parcels by the defendant John G.

Schilling and William Woodyard, and was so claimed by them ; that the said defendants held the same in trust for the benefit of the plaintiff, and at least the plaintiff is entitled to charge said twelve acres of land with his one half interest to and in said surplus proceeds of the sale thereof, with interest thereon from the time said note therefor fell due ; that plaintiff was a non resident of the state of West Virginia at the time of the procurement of said decree of December 1, 1883, with respect to said note for one thousand four hundred and fifty two dollars and so continued until the 18th day of January, 1889 ; that he did not give his consent to the making of said decree, nor authorize the same to be given, and never knew that said decree had been entered until the last of December, 1890 ; that he had heard that said twelve acres had been sold to pay the debts of H. D. Chapman, deceased, but that the fact that any surplus remained to which he was entitled, and all information with respect to said surplus, and with respect to the several matters complained of, were concealed and withheld from him ; that plaintiff, in the month of February, 1871, moved away from Roane county, and did not return until the 18th day of January, 1889 ; that from March, 1883, until the 18th of January, 1889, he was a non-resident of the state, and was absent from the state during all that time, residing in the state of New York, and in London, England, the greater part of said period.

The plaintiff also charges that there was a fraudulent combination on the part of the defendant J. G. Schilling and others to procure the sale of the entirety of the twelve acres of land aforesaid, which had the effect, or the apparent effect, of wiping out and extinguishing the plaintiff's one half interest in said valuable real estate ; that said Schilling, as administrator of said Chapman, failed to pay, and did not pay, the small sum of three or four hundred dollars, as it was his duty to do in the premises, and thus save from sale the said parcel of twelve acres of land, with the fine homestead residence and other valuable improvements thereon ; that, since the close of the year 1889, he had been informed that the said Schilling merely used the defendant M. W. Kidd as an instrument in said purchase,

and that the said Kidd paid no part of the purchase-money thereon or therefor, and that said Kidd merely acted in the matter at the request and for the accommodation of the defendant J. G. Schilling, and that said Schilling was the person wholly or substantially benefitted by the fraudulent proceedings of the modification of the decree of sale first entered as aforesaid; that the defendant William Woodyard being a cograntee with plaintiff, and being present, his interest seems not to have been sought after or connived against by the defendant Schilling, and that, by some arrangement on the part of said Schilling, the one half interest of the defendant Woodyard in the said twelve acres was saved to him, who now has and holds the full one half in value thereof, and which ownership and possession of the defendant Woodyard the plaintiff does not seek to disturb, except so far, if at all, as may be necessary in the enforcement by the plaintiff of his full and equitable rights to and in said twelve acres; that the said Kidd had no interest in said realty, and the defendant Schilling acquired none by his fraudulent transactions and procurements aforesaid; and he charges that the sale and transactions should be set aside, and that he be restored to the undivided one half of said twelve acres, or to that part thereof held by said Schilling.

The defendant, Schilling, demurred to plaintiff's bill and by his answer put in issue every material allegation it contained and alleged, that the plaintiff never had any interest in said tract of land, as it was conveyed to him and said Woodyard without any valuable consideration and with intent to hinder, delay and defraud the creditors of said H. D. Chapman, and that said Bill accepted said deed in furtherance of said object. He also alleges that said Bill filed his answer to the bill filed by said Fisher in the Circuit Court of Roane county, and that he was informed both by letter and in person of the proceedings had in said cause about the time they were entered, and says that if he was the owner of one half of said. fourteen acres of land, as claimed in his bill, it is incredible that he should have had no personal knowledge about what became of the property since February, 1871, a period of eighteen or nineteen

years, and that, having neglected his rights, if any he had for so long a time, a court of equity would not, after such a lapse of time, aid him to recover them. He denies that the lien of Henry J. Fisher was the only lien against said tract of land at the time the same was conveyed by said Chapman to the plaintiff and the defendant Woodyard, and alleges that Morgan Marks had prior to that time recovered a judgment against said Chapman for one thousand three hundred and two dollars and fifty cents with interest from May 1, 1865, and four dollars and twenty five cents costs; that George Lynch, Jr., had recovered a judgment against said Chapman for three thousand seven hundred and ninety nine dollars and twelve cents with interest from the 11th of November, 1867, and one hundred and thirty five dollars and seventy four cents costs, and the plaintiff had notice of both of said judgments prior to the date of said conveyance to him, and that said Chapman was besides these judgments indebted to the amount of about ten thousand dollars, of the larger part of which the plaintiff was informed. Said defendant also admits, that neither said Chapman nor his personal representatives paid off said Fisher's lien, but he denies that the lien reserved in the deed from said Chapman to the plaintiff and defendant Woodyard is in equity cancelled and discharged, and he also denies that the plaintiff and the said Woodyard were and are entitled to receive the sum of money arising from the sale of said property made by Special Commisioner George J. Walker after the discharge of the lien decreed in favor of said Fisher and the costs, and that if the plaintiff and said defendant Woodyard were ever entitled to receive any of the proceeds of the sale of said property, which defendant denies, they were so entitled to recover the same more than ten years before the institution of this suit; and he pleads the statute of limitations to such claim or demand, and asks that he may be protected by the law; and he denies the right claimed by plaintiff to enforce the vendor's lien retained in the deed of Special Commissioner George J. Walker to M. W. Kidd.

Respondent further says that the plaintiff and defendants Kidd, Woodyard, and himself all married daughters of said

Chapman, and, when Henry J. Fisher obtained his decree for the sale of said fourteen acres of land, the wives of the defendants were anxious that said property should not pass into the hands of strangers, and the plaintiff was written to, requesting him to join in the purchase of the same, but he answered, saying he cared nothing about the property, and would not put a dollar in it, and if defendants wanted to save the property they might do so, and that he would never claim any interest in the property, and thereupon respondent and Woodyard agreed to and did assist said Kidd in making the purchase. Said respondent also alleges in his answer that he settled and compromised with the plaintiff as to all of his claim, either to said land or surplus money, a short time before this suit was brought, by assigning to the plaintiff's wife, at his request, a note or notes amounting to one thousand dollars. The defendants Woodyard and Kidd also filed answers putting in issue the allegations of the bill, and denying that they were guilty of any fraud, or that the plaintiff was entitled to any relief.

Several depositions were taken in the cause, and on the 3d day of December, 1892, a decree was rendered in the same denying the relief prayed for, and dismissing the plaintiff's bill, with costs, and from this decree the plaintiff obtained this appeal.

The first error assigned and relied upon is as to the action of the court in its final decree in refusing the relief prayed for, and in dismissing the plaintiff's bill. In considering the questions raised by this assignment of error we notice, first, that the plaintiff appears to place great reliance on the alleged fact that, during the pendency of the chancery suits of *Fisher* v. *Chapman et al.* and *Marks* v. *Chapman et al.*, he was absent from the county of Roane, and a part of the time from this state and from the United States, and that advantage was taken of his absence to obtain decrees from the court adverse to his interests and in fraud of his rights. When, however, we consider the fact that he was not only made a party defendant in both of said suits, but also that he appeared and filed his answer in each of said causes, which answers were signed and sworn to by him, the fact, that he paid no further attention to the

cases but left the county and the state without employing an agent or attorney to protect his interests (as, appears from his own deposition, in which he states that neither in March, 1873, when the tract of fourteen acres was decreed to be sold, nor in December, 1883, when the decree was entered consenting to the surrender of the note for the balance of the purchase-money to the defendant Woodyard and himself, did he have any counsel or agent to represent him in said causes, would be anything but beneficial to his claim to be heard in a court of equity.

The decree directing the sale of the fourteen acres of land in satisfaction of the vendor's lien retained by Fisher was entered on the 13th day of November, 1872, and the plaintiff brought this suit to October rules, 1891, after a period of nearly nineteen years had elapsed, praying that the sales made therein and the several deeds made thereunder, with respect to said twelve acres of land, might be set aside as fraudulent and void as to the rights of the plaintiff therein ; that he might have a decree for the undivided half of the twelve acre-tract conveyed to him and defendant Woodyard by Henry D. Chapman on the 8th day of January, 1869, or that he might have a decree against the defendant Schilling for the portion of said twelve acres occupied by him under the partition thereof between said Schilling and the defendant Woodyard, or, if he was not entitled to that, that he might have a decree for the amount due him as aforesaid of the surplus proceeds of the sale of said twelve-acre property, with interest; that the lien for one thousand four hundred and fifty two dollars with interest thereon, reserved in the deed to the purchaser thereof, might be declared and held a valid and binding vendor's lien thereon, and that the same might be enforced by decreeing a sale of the land, and that the full amount to which he was entitled be decreed him.

In this connection it is proper to notice the fact, that more than ten years had elapsed since the execution of the deed from George J. Walker, special commissioner, to M. W. Kidd, the purchaser of said fourteen acres of land at the judicial sale, and more than eighteen years after the confirmation of said sale ; and, after waiting this great

length of time, which he seeks to excuse only by the fact that the plaintiff had voluntarily absented himself from the county and state without using the ordinary precaution of employing an attorney or agent to look after and protect his interests in the suit, he presents his bill in a court of equity, seeking to set aside the decrees of the court in said cases and avoid their effects, by alleging that the recitals therein contained were false, and the decrees obtained by fraud.

In the case of *Braden* v. *Reitzenberger*, 18 W. Va. 286 (third point of syllabus) this Court held : "A party without showing more, will not be permitted to contradict the solemn records of a court on the ground that the statements therein are false, that they show that proof was heard, when in fact no proof was heard, and charge that there was consequently fraud in both the party and the court in so entering the judgment." The court in its opinion, on page 291, says: "Suitors must learn, and it is strange they have not long ago learned, that when, by their own default, a judgment is rendered against them, it requires much more than to show that the judgment was not sustained by law or fact to impeach it in a court of equity. If they will be careless and not attend to their interests in court, and not watch the entries made of record, they must suffer the consequences of their folly. It is far better that they should suffer than that the rights of everybody else should be placed in jeopardy."

Again, when we inquire how the plaintiff acquired the interest, which he claims and is seeking to assert, in his parcel of land (which in fact contained fourteen and a half acres, part of which, two and a half acres, is spoken of as the "Argabrite tract") the proof clearly indicates, that said Henry D. Chapman was pecuniarily embarrassed and unable to meet his liabilities, and upon a conference with the plaintiff and Woodyard, his sons-in-law, it was thought best that this tract of land should be conveyed by said Chapman to the plaintiff and the defendant Woodyard, subject to the vendor's lien retained by said Fisher; that no consideration was paid by the said Bill or Woodyard therefor, and that the object of said conveyance was

to hinder, delay and defraud the creditors of said Chapman; and while it is true that under our statute, five years having elapsed since said conveyance was made, the same could not be set aside upon the sole ground that it was voluntary, yet when the plaintiff seeks to assert his right to equitable relief, which appears to be based on such conveyance alone, equity will apply the rule that he must present his bill with clean hands before he can obtain relief.

If, however, it be conceded that the plaintiff participated in no fraud in the procurement of his alleged title to the land in controversy, does his voluntary absence from the county and state afford an excuse for his long delay in the assertion of his claim? He appeared promptly and filed his answer under oath, thus bringing himself unquestionably within the jurisdiction of the court; and if by his voluntary act in absenting himself from the county and state he was ignorant of what was transpiring in the case, it was attributable to his own neglect; and if, as he states, the alleged fraud was discovered by him by an examination of the record, this same fraud might have been discovered by an examination of the same record eighteen years before the institution of his suit; and if he could be allowed to wait eighteen years before he makes such examination, who can say how long he may not wait before he looks after his interests in a suit, to which he is a party defendant, and then ask that the decrees be set aside excusing his delay on the ground of his ignorance of what the record contained?

In the case of *Trader* v. *Jarvis*, 23 W. Va. 100, this Court held (second point of syllabus) that "delay in the assertion of a right, unless satisfactorily explained, even where it does not constitute a positive statutory bar, operates in equity as an evidence of assent, acquiescence, or waiver; and especially is such the case in suits to set aside transactions on account of fraud or infancy. Laches and neglect are always discountenanced by a court of equity."

In the opinion p. 108, SNYDER, J., says: "A court of equity, which is never active in relief against stale demands will always refuse relief where the party has slept upon his

right and acquiesced for a great length of time. Nothing can call into activity this court but conscience, good faith, and reasonable diligence; where these are wanting, the court is passive, and does nothing."

The authorities on this subject are collated in the case of *Whittaker* v. *Improvement Co.*, 34 W. Va. 229, 230 (12 S. E. Rep. 507) citing the case of *Curlett* v. *Newman*, 30 W. Va. 182 (3 S. E. Rep. 578) in which this Court refused to set aside a deed for misrepresentation and fraud nearly five years after its date, and the court called it a great delay in commencing suit and refused relief. See, also, *Pusey* v. *Gardner*, 21 W. Va. 470; *Hale* v. *Cole*, 31 W. Va. 585 (8 S. E. Rep. 516); *Doggett* v. *Helm*, 17 Gratt. 96; *Walker* v. *Ruffner*, 32 W. Va. 297 (9 S. E. Rep. 215); *Harwood* v. *Railroad Co.*, 17 Wall. 78. But if no demurrer had been interposed, and neither laches nor the statute of limitations had been relied on in the answer, yet, if the decree complained of had been entered by the Circuit Court by reason of the evidence adduced in the cause with reference to the compromise entered into between the plaintiff and the defendant Schilling, we would not feel warranted in reversing the action of the Circuit Court.

Let us look for a moment at the circumstances surrounding this alleged compromise. Schilling's wife was dead; he had inherited from her three thousand dollars in notes, representing the purchase-money of some land she had sold; Schilling had married again; some unpleasantness had grown up between the plaintiff's wife and the second wife of Schilling, and, in consequence, Mrs. Bill had left the house of Schilling, and gone to visit her sister Mrs. Woodyard. Schilling had concluded to divide the three thousand dollars, inherited by him from his deceased wife, between Mrs. Woodyard, Mrs. Bill, and himself, and had informed them of the fact, and had handed four of the five hundred dollar notes to these ladies, in order that they might agree upon a division of them as they fell due at different periods. While they were in possession of the notes the plaintiff went to Schilling's office and, during the interview, in arranging some of their personal matters, some hot words passed, and the plaintiff threatened to sue said

Schilling, and thereupon Schilling refused to assign said notes to the plaintiff's wife, but, after some controversy, consented to do so if such assignment should settle all claim that he or his wife had to the property in controversy, and all claim that either of them might have to Schilling's wife's estate, which proposition was accepted by said Bill, and the notes assigned to Mrs. Bill without recourse. These facts are stated in the deposition of Schilling and confirmed by the witness, Starkey, and, although contradicted by the testimony of Bill, yet he shows by his own testimony, that he had forgotten all about the details of the transaction. In order to contradict the witness Starkey, he stated positively, that he did not produce the notes when he went to Schilling's office, but that he went there on purpose to get them and got them of him there indorsed, and, to contradict Schilling, stated that said Schilling took the notes from his pocket, and indorsed them, and gave them to him; and, when recalled, admitted that he had made a mistake, when he said he demanded the notes of said Schilling in the interview he had with him at his office; that he was satisfied he did have the two notes in his possession and took them to Mr. Schilling to be indorsed by him; and, when asked, "If in your deposition you also stated you had not seen the two notes, until Mr. Schilling produced them at the interview referred to, and that you were satisfied that your wife had never seen these Hall notes until after the interview, what can you now state with regard to those matters?" replied, "I am now satisfied that Mrs. Bill did have those notes in her possession prior to this interview with Mr. Schilling, and that, when I went to Mr. Schilling's office, I had obtained the notes a few months before, probably from Mr. Woodyard, where they had been left for safe keeping." The witness Starkey was a young man staying in Mr. Schilling's office, and, so far as appears, was perfectly disinterested, and, while he was mistaken as to the amount of the note, which he said he thought was for one thousand dollars, yet he appears to have been correct as to the fact that the plaintiff brought the note that was assigned to Schilling's office with him, and he says Mr. Bill spoke about Schilling's assigning the note, and said, "If he would do so,

we would release all claim to the property over here that we have ;" so that, if the testimony of Bill and Schilling should be regarded as balancing each other, the testimony of Starkey on this question of fact would tip the scale in Schilling's favor, and upon the weight of the testimony the plaintiff would not be entitled to recover.

It is, however, assigned as error, that the court refused to allow the plaintiff to amend his bill. The motion for leave to amend was made after the cause had been submitted and the court had announced its opinion, and then without tendering the amended bill or indicating in what respect the amendment was desired. In *Western M. & M. Co. v. Virginia Cannel Coal Co.*, 10 W. Va. 251, this Court held, that under section 12 of chapter 125 of the Code the plaintiff may amend his bill at any time after the appearance of the defendant, if substantial justice will be promoted thereby ; but the judge of the court below is clothed with discretion to say "where substantial justice will be promoted thereby," and, unless the record shows that the court erred in exercising that discretion, the decree denying the right to amend will not be reversed.

In the case under consideration the amended bill does not appear to have been tendered, neither does it appear in what respect the amendment was desired. We therefore are of opinion that the court committed no error in the circumstances in refusing the leave asked for to amend. Our conclusion therefore is that there is no error in the decree complained of, and the same is affirmed with costs and damages.