FAY PAULINE FARLEY, *an Infant, etc.,* BY
EDITH CLAGG FLORA, *Her Next Friend*

*v.*

AMY DORA FARLEY, *et al.*

(No. 10343)

Submitted September 25, 1951. Decided December 11, 1951.

*Walter L. Ferguson, Will H. Daniel* and *John W. Daniel,* for appellant.

*Daugherty & Daugherty,* for appellees.

Lovins, Judge:

This suit was instituted in the Circuit Court of Cabell County by Fay Pauline Farley, an infant, who sues by Edith Clagg Flora, her next friend, to remove cloud on title to certain real estate, situated in Cabell County, consisting of six lots, title to which she contends is vested in her as the only child and heir at law of Charles Rayburn Farley, who died intestate on September 24, 1947, seized of such land.

Among the defendants are those persons who, but for plaintiff's contention, would be heirs at law of Charles Rayburn Farley, hereinafter referred to as "decedent", namely, Amy Dora Farley, mother; A. Jennings Farley, brother; and Mary Charlotte Linville, Virgie May Farley, Violet Faye Neff, and Grovie Mabel Nott, sisters of decedent. Georgia E. Horsley, a sister, who was deceased at the time of decedent's death, evidently left as an heir at law Oris Horsley, who is also a defendant. Defendants Barb

Linville, Berkley C. Neff, and Jewell Farley are apparently joined as spouses of certain of the defendants.

The above named brother and sisters of decedent, their spouses, and defendant Oris Horsley, on November 1, 1944, conveyed all of the land here involved to the defendant Amy Dora Farley. On August 12, 1946, Amy Dora Farley conveyed a portion of such land to Harry L. Ferguson and Violet Ferguson, and on November 16, 1946, she conveyed another portion of such land to Oren Brannen and Helen Frances Brannen. Those grantees are defendants in this suit.

The Fergusons, on the same date they acquired their property, conveyed it to C. W. Freeman, trustee, to secure Amy Dora Farley the payment of a note. At the time of the commencement of this suit, C. W. Freeman was deceased, and Irene Freeman, administratrix of his estate, is joined as a defendant herein.

The plaintiff prayed that all the foregoing conveyances be set aside as a cloud on her title to the property.

Defendant Amy Dora Farley, hereinafter referred to as "Mrs. Farley", is the sole defendant answering the bill of complaint. Her answer denies that plaintiff is the child of decedent.

The case was considered by the trial chancellor on the bill of complaint, the answer, exhibits and testimony taken *ore tenus*. From a decree dismissing the bill of complaint plaintiff prosecutes this appeal.

Plaintiff was born in Cabell County on November 20, 1929, to Edith Clagg, then unmarried and under sixteen years of age, who will be hereinafter referred to as "Edith". Edith obtained a bastardy warrant from a justice of the peace in Cabell County on December 9, 1929, contending that the decedent was the father of her child. Her mother, Mrs. Stella Clagg, obtained a warrant on the same date and before the same justice charging decedent with rape. Decedent filed a plea of not guilty to each charge before the justice. He gave bond and was held to

the action of the grand jury on the rape charge. But the justice tried the decedent on the bastardy complaint, found him guilty of such charge, and certified his ruling to the Circuit Court of Cabell County, though in so trying him he exceeded his jurisdiction.

Edith and decedent were married on January 30, 1930, after decedent had been advised by a friend that such marriage would be the best way to avoid prosecution on the criminal charges. After the marriage of Edith and decedent, the bastardy charge was dismissed. No indictment for rape was returned, and the couple lived together in Cincinnati, where decedent was then employed.

The plaintiff offered the testimony of L. W. Blankenship, who was prosecuting attorney of Cabell County at the time the rape warrant was issued, that it was the policy of the prosecutor at that time to abstain from prosecuting a person accused of rape, where the party so accused subsequently married the alleged victim. But the trial court excluded such testimony.

During her marriage to decedent, Edith gave birth to a second child, which she admits was not the child of decedent.

After the couple had lived together for about five months, Edith came to the home of her parents in Cabell County for a visit, and, being unable to obtain funds from decedent to return to Cincinnati, she stayed in West Virginia. A divorce followed in the State of Ohio. Plaintiff remained with her mother, who later married Delbert Flora.

There is no direct evidence of sexual intercourse between decedent and Edith. The court refused to permit Edith to testify as to the paternity of the child, although the information for the bastardy warrant, which was signed by Edith and in which it was alleged that decedent was the father of her child, was filed as an exhibit. The court also refused to permit Edith to identify her signature on an affidavit charging decedent with paternity,

which was one of the papers in the bastardy case before the justice of the peace. Such affidavit was permitted to be filed, however, on the theory that it was an official document laying the groundwork for the bastardy proceeding before the justice.

Evidence of courtship and association between Edith and decedent previous to the birth of plaintiff, which might have resulted in the child's conception, is uncertain and inconclusive.

Mary Coyle, a neighbor of the Claggs, testified that during the winter prior to the birth of the child, decedent spent most of his time at the Clagg home, courting Edith. Edith's mother testified that for some time prior to the child's birth, Edith and decedent kept company steadily, and that Edith did not associate with any man other than decedent.

The foregoing evidence is disputed by the testimony of defense witnesses, which was offered to establish that decedent was working and living in Cincinnati during the year 1929. Mrs. Farley testified that she and her family, including decedent, moved to Cincinnati from Huntington in 1927 and remained there until July, 1929, at which time the family moved back to Huntington; but decedent remained in Cincinnati. A witness, who was in the transfer business in 1929, testified that he moved the family from Cincinnati to Huntington in the summer of that year. Mrs. Farley also said that she couldn't recall that during her residence with decedent in Cincinnati from 1927 to July of 1929, decedent was ever away from home. Decedent's friend, who recommended his marriage to Edith, testified that on the occasion of such advice, he asked decedent where he had been and decedent replied that he had been in Cincinnati.

Various documents, found among decedent's personal effects after his death, were filed as exhibits, in connection with Mrs. Farley's testimony, to establish that the family was residing in Cincinnati prior to July, 1929, and to show that decedent remained there at the time the

family moved back to Huntington. Such exhibits were: two postcards from Mrs. Farley in Cincinnati to her daughter in Canton, one dated March 8, 1929, and the other dated May 6, 1929; two postcards dated in August 1929, sent by Mrs. Farley from Huntington to decedent in Cincinnati; a postcard to decedent in Cincinnati in August 1929 from his sister in Huntington; a season ticket for the year 1929 in the name of decedent, issued by Chester Park in Cincinnati, where decedent worked; and a statement dated October 4, 1932, on the letterhead of Chester Park, to the effect that decedent had been employed at that place for the previous four years.

Evidence as to decedent's acknowledgment of paternity is also conflicting. A sister of Edith testified that decedent had told her prior to his marriage to Edith that plaintiff was his child, and that, after his divorce from Edith, decedent had sent the witness money for plaintiff. The sister identified a valentine, which was addressed to plaintiff as "Miss Fay Farley", at the home of the witness, and was signed "Daddy to Polly." A Christmas card from decedent to plaintiff, received at the home of the witness, was also introduced. Mary Coyle testified that on one occasion, after the plaintiff's birth, she had said to him: "It kind of looks like you are going to get married," to which he replied: "Well, after all, the baby is mine." Mrs. Stella Clagg testified that about a month after the child's birth, decedent told her that he was the child's father.

A witness for the defense testified that decedent had told him the child was not his. In a letter to his mother, dated December 16, 1933, after his divorce, decedent wrote: "*m*om I could have sent Edith those papers *B*ut why should I spend 75c for her *B*enefitt. * * * she has cost me a enough for *d*onald *stewar*d's kid." The Donald Stuart referred to was the husband of Edith's sister. There is no direct evidence of an affair between Edith and Stuart.

Plaintiff testified that the Farley family recognized her

as one of them. She says that she called Mrs. Farley "grandma" and decedent's brother and sisters "uncle" and "aunts", and that she frequently stayed overnight and week ends at Mrs. Farley's home. In the last statement she is corroborated by her mother and aunt, who further said that Mrs. Farley treated plaintiff with much affection. Plaintiff also testified that she attended decedent's funeral with the Farley family and that on that occasion Mrs. Farley told her, "Your daddy begged for you before he died." Mrs. Farley denies she ever recognized plaintiff as her grandchild; denies that plaintiff stayed at her home frequently; denies that plaintiff attended the funeral with the family; and denies that she made the statement at the funeral which plaintiff attributes to her.

A school record was admitted into evidence to show that plaintiff had been enrolled throughout her elementary and grade school education as Faye Flora, the surname being that of Edith's second husband. But plaintiff says that all of her acquaintances knew that her name was Farley. Edith testified that in matters other than the registration at school the child had gone by the name of Farley.

A paper which purported to be a testamentary disposition of all of decedent's property to his mother was filed as an exhibit. This document was in the handwriting of the friend who advised decedent to marry Edith. The friend testified that the purported testamentary writing was signed by decedent the day before he died in his presence and the presence of two subscribing witnesses. Mrs. Farley's counsel concedes that this may not be a valid will. It has not been offered for probate, and was admitted into evidence in the instant case for what it was worth, but not as a will.

Since the death of decedent, Mrs. Farley has improved the property here involved by completing the log house started by the decedent in his lifetime and by building a new house.

Defendants Owen Brannen and Harry Ferguson testi-

fied as to their reliance on the record title and their reasons for reliance as purchasers from Mrs. Farley.

The deputy clerk of the county court of Cabell County read into evidence from the fiduciary record of his office the list of heirs at law furnished by the affidavit of Amy Dora Farley, administratrix, such persons being some of the above named defendants.

Plaintiff offered, as rebuttal evidence, the testimony of John Wilson, a neighbor of the Claggs, to the effect that during the winter and spring of 1929, he had seen decedent at the Clagg home many times, and that in 1942, in a conversation with him, decedent had asked him how "his Fay" was getting along. Such testimony, vouched for the purpose of the record, was excluded upon objection by defendant.

Plaintiff sought also to introduce a letter from a Selective Service headquarters, directed to counsel for plaintiff, stating that on his Selective Service questionnaire, decedent had represented that he was divorced, that he had one child under eighteen years of age, and that she did not live with him. The letter further stated that the questionnaire, which was unavailable at the trial of the instant suit, was being sent to national headquarters for photostating, and a photostatic copy, when completed, would be forwarded to counsel. Plaintiff's counsel stated that he had been endeavoring unsuccessfully for about two months to obtain the questionnaire and that the delay resulted from inability to find where decedent had registered for selective service. The trial court nevertheless excluded the letter on the ground that the questionnaire, or an authenticated copy thereof, would be the best evidence of the matters sought to be proved. Permission for a later filing of the photostatic copy was likewise refused.

Plaintiff then sought to file an amended and supplemental bill of complaint, which would have joined new defendants, who were parties to deeds of trust not theretofore discovered by plaintiff. But the trial court refused to permit the filing of such amended and supplemental

bill, on the ground that the mistake in not making such parties defendants to the suit originally could not be remedied.

The trial chancellor, in a written opinion filed with his decree dismissing the bill of complaint, held that the evidence was insufficient to establish that the decedent was the father of plaintiff.

Plaintiff complains that the trial court erred in dismissing the bill of complaint; in admitting and rejecting certain evidence; in remarking during the course of the trial that the burden of proving legitimacy by a preponderance of the evidence rested upon plaintiff; and in refusing to permit the filing of the amended and supplemental bill of complaint.

The plaintiff bases her claim as a legitimate heir at law of decedent upon Code, 42-1-6, which provides: "If a man, having had a child, or children, by a woman, shall afterwards intermarry with her, such child, or children, or their descendants, shall be deemed legitimate."

Code, 42-1-6, is applicable only when both of the essential conditions are present: (1) that a man has had a child by a woman, and (2) that the man and the woman have intermarried after the birth of the child. The burden of proving the existence of such facts is upon the child; but every presumption should be indulged in favor of legitimacy. *Hoover* v. *Hoover,* 131 Va. 522, 105 S. E. 91, 109 S. E. 424. A mere preponderance of the proof, as in other civil cases, is sufficient to sustain the issue. 1 Jones on Evidence in Civil Cases, Fourth Ed., §5. See *Pope* v. *Kincaid,* 99 W. Va. 677, 129 S.E. 752. We therefore see no error in the remark of the trial court as to where the burden of proof in the instant case lay, and the measure of evidence necessary to sustain it.

Plaintiff contends that the trial court erred in not permitting Edith, in her testimony, to name the father of her child. But the trial court acted properly in rejecting such testimony. Being the mother of the infant plaintiff and liable for her support during infancy, as well as a

party to the instant suit as next friend of plaintiff, she was incompetent to testify as to plaintiff's paternity. Code, 57-3-1. "The *prochein ami,* being liable for costs in the event the suit should terminate adversely to plaintiff, is not a competent witness, under [Code, 57-3-1], to prove a [transaction] between himself and a deceased person, against the heirs at law of such deceased person." *Cooper* v. *Cooper,* 65 W. Va. 712, 64 S. E. 927.

For the same reason, the court's refusal to permit Edith to identify her signature to the affidavit made by her before the justice of the peace on the occasion of obtaining the bastardy warrant, was likewise proper. The court acted correctly in permitting the affidavit to be filed as an exhibit, however, for the reason that such paper was a part of the proceeding before the justice. Code, 48-7-1, provides that upon an accusation before a justice of the peace by an unmarried woman that a person is the father of her bastard child, "Such justice shall examine her under oath, and reduce her examination to writing and sign it." Upon that examination, which, in the proceeding here considered, was set forth in Edith's affidavit, a warrant would issue. It may be said here, however, that the justice exceeded his authority in trying the bastardy charge against the decedent, it being his duty to hold the accused to the action of the circuit court at its next term. The statute is the measure and limit of his jurisdiction. *Holmes* v. *Clegg,* 131 W. Va. 449, 48 S. E. 2d 438.

Plaintiff asserts that the court erred in permitting the deputy county clerk of Cabell County to read from the fiduciary record of his office the affidavit, filed by Amy Dora Farley as administratrix of the estate of decedent, listing the names and addresses of the heirs and distributees. Such affidavit is a public record required by Code, 44-1-13, to be filed by the fiduciary at the time of his qualification, the statute providing that such affidavit "shall be prima facie evidence of what is contained therein." There was no error, therefore, in admitting the affidavit.

The admission of testimony of the witnesses Brannen and Ferguson that they had relied on the title opinion of attorneys in the purchase of their property from Mrs. Farley was not error. That testimony was offered in connection with the evidence previously introduced as to the contents of the fiduciary records of the Cabell County Clerk's office, and merely showed the reliance the purchasers placed on the record title to the land.

Plaintiff contends that the court erred in "disregarding" the testimony of Mary Coyle, who had stated that decedent spent most of his time at the Clagg home in the months prior to plaintiff's birth, and that decedent had told her the child was his. But there is no indication that the trial court disregarded such testimony in reaching his conclusion. It is to be presumed that such evidence was given due consideration.

No reversible error appears from the exclusion of the testimony of the former prosecuting attorney of Cabell County relative to the policy of his office with respect to the prosecution of charges of rape where the accused person, subsequent to the accusation, marries the complaining party. We think that the policy of that office in such matters was sufficiently shown by the established fact that decedent was not prosecuted on such charge, and the exclusion of the former prosecutor's testimony, if error, was not prejudicial.

Plaintiff contends that the court's admission of the defense exhibits, consisting of various postcards, the amusement park season ticket, and the statement of decedent's employer, was erroneous. It is true that some of such exhibits may have been too remotely connected with the issue of paternity to be relevant, but their admission into the record would certainly not be ground for reversal of the lower court's decision.

The testimony of decedent's friend, that decedent told him in December, 1929, that he had been in Cincinnati, may be characterized as hearsay, but its admission was

not so prejudicial as to constitute reversible error, as plaintiff contends.

The rejection of the testimony offered by plaintiff as rebuttal evidence is not error. As a general rule, the conduct of trials, subject to the well established rules of practice and procedure, rests within the sound discretion of the trial judge. That general rule is applicable to admissibility of evidence in rebuttal which could and should have been introduced by the plaintiff in chief: *Keatley* v. *Chevrolet Co.*, 121 W.Va. 669, 675, 6 S.E. 2d 1; *Weaver* v. *Traction Co.*, 91 W.Va. 528, 114 S.E. 131; *State* v. *Williams*, 49 W. Va. 220, 38 S. E. 495; *Clarke* v. *Ohio River R. Co.*, 39 W. Va. 732, 20 S.E. 696; *Johnson* v. *Burns*, 39 W.Va. 658, 20 S.E. 686; *Lewis* v. *Alkire*, 32 W.Va. 504, 9 S.E. 890; *Bowyer* v. *Knapp & Martin*, 15 W.Va. 277. "Generally, whether plaintiff shall be allowed to give further evidence after defendant's evidence is closed is within the discretion of the trial court, and its exercise will rarely be ground for reversal." *Weaver* v. *Traction Co., supra;* 3 Jones on Evidence in Civil Cases, Fourth Ed., §809. The evidence offered in rebuttal was merely cumulative of testimony offered by plaintiff in chief, and as such, its admissibility is likewise within the sound discretion of the trial court. *Elswick* v. *Transit Co.*, 128 W.Va. 241, 36 S.E. 2d 419. We cannot say that there was any abuse of such discretion in the exclusion of the testimony in rebuttal.

Plaintiff complains of the exclusion of the letter from the Selective Service office in Ohio setting forth the answers made by decedent in his questionnaire. The general rule is that primary evidence must be produced if available, and it is only where such evidence is unobtainable, or cannot be produced within a reasonable time, that secondary evidence may be admitted. *State* v. *Lee*, 103 W.Va. 631, 138 S.E. 323; *Thompson* v. *Coal & Coke Co.*, 104 W.Va. 134, 139 S.E. 642; *State* v. *Mazourik*, 105 W.Va. 117, 141 S.E. 622. The trial court did not err in invoking the best evidence rule in excluding the letter; nor was there error in refusing to permit plaintiff to file a photostatic copy of the questionnaire at a future date. The admission

of such evidence, being offered in rebuttal, would be subject to the discretion of the trial chancellor, as above discussed.

We perceive no error in the exercise of discretion by the trial chancellor in denying plaintiff permission to file an amended and supplemental bill of complaint, and, in the absence of such error, there is no cause for reversal on that ground. *Stealey* v. *Lyons,* 128 W.Va. 686, 37 S.E. 2d 569; *Bill* v. *Schilling,* 39 W.Va. 108, 19 S.E. 514; *Western M. & M. Co., et al.* v. *Va. Cannel Coal Co., et al.,* 10 W.Va. 250.

It will be seen from the foregoing that practically all of the assignments of error are grounded on the trial court's admission and rejection of evidence. For that reason we have discussed the evidence in some detail.

"When an issue is tried by the circuit court in lieu of a jury, the introduction of illegal evidence is not a material error. The inquiry in this Court will be, is there sufficient competent evidence in the record to justify the decision of the lower court?" *Maxwell* v. *Ford,* 103 W.Va. 124, 136 S.E. 777. In the case of *Wells-Stone M. Co.* v. *Traux,* 44 W.Va. 531, 29 S.E. 1006, it was held: "In a case tried by a court in lieu of a jury, it is not error in the court to hear illegal testimony, the court being fully competent to discard such evidence." To the same effect are: *Risher* v. *Wheeling Roofing and Cornice Co.,* 57 W.Va. 149, 157, 49 S.E. 1016; *Bank* v. *Prager & Son, et al.,* 50 W. Va. 660, 692, 41 S.E. 363; *State for use of Crumbacker* v. *Seabright,* 15 W. Va. 590; *Nutter* v. *Sydenstricker,* 11 W. Va. 535. In the instant suit, the evidence was heard by the trial chancellor. There is sufficient legal evidence in the record herein to justify and support the decision made, and the decree entered, by the trial court.

The trial chancellor's appraisal of testimony taken in his presence is entitled to special respect by this Court. *Napper* v. *Rice,* 127 W.Va. 157, 32 S.E. 2d 41. We cannot say that the finding of the chancellor on the evidence in

the instant case is clearly wrong or is against the preponderance of the evidence, and therefore such finding will not be disturbed upon this appeal. *Spradling* v. *Spradling,* 118 W.Va. 308, 190 S.E. 537.

For the foregoing reasons, the decree of the trial chancellor is affirmed.

*Affirmed.*