# CHARLESTON

PETERS *v.* NOLAN COAL COMPANY *et nl.*

Submitted January 22, 1907.    Decided February 26, 1907.

1. BILLS AND NOTES—*Indorsement Before Delivery—Rights of Payee.*
   The law respecting the right of election by the payee of negotiable paper to hold irregular indorsers thereof as joint makers, or as guarantors or indorsers, as declared in *Golding Sons Co. v. Cameron Pottery Company,* decided at the October term, 1906, and in *Miller v. Clendennin,* 42 W. Va. 416, and *Long v. Campbell,* 37 W. Va. 665, re-affirmed and applied to this case.    (p. 393.)

2. SAME.
   The right of election by the payee in such cases is determined by the contract made before or at the time of the making and delivery of the paper to the payee, unaffected by the subsequent dealings of the payee with the paper; and such right extends to renewals of such paper by the same parties, unless a new contract is shown.    (p. 393.)

3. EVIDENCE—*Admissions—Recitals in Deed—Admissibility.*
   A deed containing admissions of facts generally conclusive between parties and their privies, amounting to declarations of a pecuniary or proprietary nature against their interest, is admissible in evidence by a stranger, whether plaintiff or defendant,

against all the other parties to the suit who have a joint interest in the matter of it with the party making the admission. (p. 396.)

4. BILLS AND NOTES—*Actions—Instructions.*

Instructions to juries on the trial of actions by payees against the maker and the irregular indorsers of such paper, which ignore the element of contract between payee and such indorsers necessary to deprive him of such *prima facie* right of election are properly refused    (p. 398.)

5. SAME.

The law of such contracts applied to a case in which the evidence was not sufficient to overcome the *prima facie* right of election by the payee of such irregularly indorsed paper.    (p. 398.)

Error to Circuit Court, Mercer County.

Action by W. J. Peters against the Nolan Coal Company and others.   From a judgment in favor of plaintiff, defendants B. Moore and another bring error.

*Affirmed.*

H. A. RITZ, for plaintiffs in error.

JAMES H. GOLLEHON and HALE & PENDLETON, for defendants in error.

MILLER, JUDGE:

In the circuit court there was a verdict and judgment thereon in favor of the plaintiff, W. J. Peters, against B. Moore and T. L. Henritze for $1061.17.   The usual motions to set aside the verdict, to arrest judgment thereon, and for a new trial, were overruled.   The declaration was debt, in five counts, to which and to each count a demurrer was interposed and overruled.   While the petition for the writ of error makes this ruling of the court one of its points of objection to the judgment, the point seems to be abandoned in the briefs and arguments of counsel; for it is not mentioned therein, and no grounds therefor are assigned.   As we do not perceive any material objection to the declaration, so that a judgment thereon according to the very rights of the case may not stand, we will take no further notice of the point.

The immediate cause of action was a negotiable note dated January 19, 1905, purporting to have been made and signed

by the Nolan Coal Company by B. Moore, treasurer, whereby one hundred and twenty days after date "*we promise to pay to the order of W. J. Peters one thousand dollars, negotiable and payable at the Bank of Bramwell, Bramwell, W. Va. Homestead and all other exemptions waived by the maker and each indorser. Value received.*" At the time the note was made, and before it was delivered to the payee, it was indorsed by B. Moore and T. L. Henritze, and the pleadings and proof show that it was thus made and indorsed and delivered in renewal of a previous note of like amount, made and indorsed and delivered to the plaintiff by the same maker and indorsers, in consideration of $1000 advanced by him by his check to the defendant Henritze, as attorney for the coal company, to pay on the debts of that company in accordance with an agreement with creditors previously negotiated by Moore and Henritze on behalf of the company.

The plaintiff, who advanced the money on the original note, some fourteen days afterwards indorsed his own name before the names of Moore and Henritze, and negotiated it at the Bank of Bramwell. Afterwards he accepted the said renewal note so made, on the same terms of security, and used it in the bank to take up the old note. He has elected to treat these irregular indorsers as makers, and as primarily liable to him, and has sued them as such.

Our previous decisions, and the authorities therein cited as binding us, so clearly state the law respecting the rights of the holder and the liabilities of such irregular indorsers of negotiable paper, that we need only refer to them. As there stated, the law is that when one makes a negotiable note to a payee, and others put their name on the back of it, the payee not indorsing it, and it is then delivered to the payee, he may treat them all as joint makers, or he may treat those putting their names on the back of the paper as indorsers or guarantors, at his election, unless he agrees before or on the delivery of the paper to treat them in a particular one of those characters. *Burton* v. *Hansford*, 10 W. Va. 481; *Long* v. *Campbell*, 37 W. Va. 665, and cases cited; *Roanoke G. & M. Co.* v. *Watkins*, 41 W. Va. 787; *Miller* v. *Clendennin*, 42 W. Va. 416; *Golding Sons Co.* v. *Cameron Pottery Co.*, opinion by JUDGE SANDERS, de-

cided at the October term of this Court. The rule stated above is substantially in the language of JUDGE BRANNON in *Miller* v. *Clendennin*, and of JUDGE SANDERS in the last case decided by this Court. While the words "indorser" and "security," used by the witnesses in this case, have ordinary, legal and technical meanings, yet, as JUDGE BRANNON says in *Miller* v. *Clendennin, supra*, with reference to the evidence in that case, "even if 'indorser' were used it would not alone tie Miller down to regard the parties as such, as it would be construed only in the general sense of surety."

The point is made in this case that the note sued on, the renewal note, and also the original note, after they were made and the money was advanced by the payee, Peters, he indorsed his name ahead of Moore and Henritze, and discounted the same in the bank, thereby evidencing an agreement to be either held first liable, or bound jointly with the other indorsers. This would be true as to the bank that discounted the note for Peters; but as between Peters, and the maker and indorsers, they are bound according to the original contract at or before the time the paper was made and delivered to Peters, and the right of election of the payee would not be destroyed by any subsequent disposition of the paper by him. In the case of *Orrick* v. *Colston*, 7 Grat. 189, the payee, after the note was made and delivered to him, and before he sued the maker and indorser, wrote above the name of the indorser: "In consideration of the loan of $1000 by the payee, I guarantee the payment of the within sum of money." The declaration in the case charged Colston both as original surety for the debt and also guarantor, and the court held it was competent for the payee to make his election at any time. In *Miller* v. *Clendennin*, the evidence was that the payee, Miller, some four years after the note matured, and after Clendennin, the maker, had become insolvent, asked him to give him a new note, saying that he had no security on that note at all; that he could not hold Barbee and Mossman any longer; and that he had also said to Mossman that he wanted him and Barbee to give a new note, that he could no longer hold them, the time having expired. JUDGE BRANNON, commenting on this evidence, says: "What does this talk mean? Not a release, for he still

claimed the debt, and there was no consideration for a release. But it is not relied upon as a release, but as showing that from the beginning Miller regarded Barbee and Mossman as indorsers. Unless such was the agreement, he could change his mind at any time, even if he so intended, or, through ignorance of law, knew no better, for, as said in *Hansford* v. *Burton, supra*, the payee may exercise the option to treat those who put their names on the note in one character or another at any time, and so long as he holds the note it may be changed at his pleasure, even after suit."

These authorities clearly indicate that the rights and liabilities of the parties to such paper are to be determined by the facts existing at the time of the original transaction. The indorser Moore in his testimony says, it was his understanding that the note was to have been discounted in the Bank of Bramwell to meet Peters' check, but he is not supported in this by the evidence of either Peters or Henritze. The cases of *Miller* v. *Clendennin*, pp. 481, 419, and *Long* v. *Campbell*, there cited, decide that all such agreements or understandings affecting the *prima facie* rights of the payee of such irregularly indorsed paper must be shown to have been had or made with the payee in order to deprive him of such rights.

The questions of fact, whether by the agreement between the maker and the indorsers, and the payee of the original and the renewal note sued on, the indorsers were to be treated as joint makers, or as guarantors or indorsers, were all in issue before the jury; and we can not disturb their verdict, except upon the well settled rules of law.

But preliminary to that subject, and as effecting the verdict, some questions arising at the trial are presented: First, as to the admission in evidence on behalf of the plaintiff of a deed of trust dated October 1, 1904, from the Nolan Coal Company to Geo. E. Miller, trustee, for the purpose of showing that the partial consideration or purpose thereof, as recited therein, was "to indemnify and save harmless B. Moore and T. L. Henritze as indorsers for the party of the first part upon a note executed by the Nolan Coal Company to W. J. Peters, and *indorsed* as aforesaid, which note will be due and payable four months from its date with interest,

dated September 19th, 1904.'' The record shows that this
deed was first offered in evidence by the plaintiff in connec-
tion with the cross-examination of the defendant T. L. Hen-
ritze, when the objection thereto was sustained.  The wit-
ness had stated that he had been acting in the whole matter,
except in so far as the indorsement of the note was con-
cerned, as attorney for the company, and knew of the exist-
ence of this deed of trust, but was not sure whether he as
attorney had prepared the deed of trust, as the certified copy
had no earmarks by which he could determine whether he
had prepared the paper or not.  Afterwards, when the de-
fendants closed their evidence, the plaintiff again offered the
deed on rebuttal, and it was admitted over the defendants' ob-
jection, by which we understand the first ruling was based
solely on the irregularity of the offer, it being proper evi-
dence in rebuttal.  If this deed was not proper evidence in
rebuttal, why not?  On its face it shows it was attested by
Moore as secretary, and it appears to have been acknowl-
edged by President Elliott on behalf of the company before
T. F. Henritze, a son and law partner of the defendant Hen-
ritze.  The recital certainly tends to support the claims of
the plaintiff; and though, so far as the record shows, not a
contemporaneous transaction, yet it does recite the agree-
ment made with the creditors by Moore and Henritze prior
to the making of the original note in controversy, substan-
tially as these witnesses testify.  They had the opportunity,
but did not undertake, to rebut the presumption that the deed
recites the facts in regard to their position on the note.  The
deed, therefore, amounts to a declaration by the defendants
of a pecuniary or proprietary nature against their interest,
and is admissible on that ground, if no other. *Bartlett* v. *Pat-
ton*, 33 W. Va. 71 (8th Syl.); *Tate* v. *Tate*, 75 Va. 532.
This is true, although the facts were not communicated to the
plaintiff at the time.  *Schwartz* v. *Hersker*, 140 Pa. St. 505.
And such admissions of one of the parties to the record, whether
as plaintiff or defendant, are competent evidence against all the
other parties to the suit who have a joint interest in the
matter of it with the party making the admission. *Dickinson*
v. *Clerk*, 5 W. Va. 280; 1 Am. & Eng. Enc. L. (2nd Ed.) 703.
Such admissions may be made in a deed.  16 Cyc. 945.  Or
in a memorandum. *Tate* v. *Tate, supra.*  When offered by

the parties or their privies, they are generally conclusive; but when offered in evidence by strangers, they are not conclusive, but the adverse party may repel the effect in the same manner as though they were parol admissions.   1 Greenleaf on Ev., section 211.   On these authorities and many others, we conclude the court committed no error in admitting this deed in evidence.

Another preliminary question is as to the giving of instructions "A" and "B" of the defendants.   Instruction "A" was as follows:   "The Court instructs the jury that if they believe from the evidence in this case that the note was executed in renewal of a note which was made for the purpose of enabling the plaintiff W. J. Peters, and the defendant, B. Moore, to raise the sum of $1000 for the Nolan Coal Company, and that the said Peters and Moore undertook jointly to raise said sum by said means and that the defendant, T. L. Henritze, endorsed the same for the purpose only of enabling them to raise said money on said note, then they shall find for the defendants."   Instruction "B" reads: "The court instructs the jury that if they believe from the evidence in this case that T. L. Henritze, one of the defendants herein, subscribed his name to the note introduced as evidence in this case solely for the purpose of accommodating the said B. Moore and W. J. Peters, and if you further believe from the evidence introduced that said T. L. Henritze derived no benefit therefrom, then you must find for the defendant, T. L. Henritze."   The vice of each of these instructions is that they ignore the element of actual contract with the payee always involved in such cases.   These instructions were in the interest mainly of the defendant Henritze.   The question before the jury was not what was the purpose of the making of the note, and of the indorsers in indorsing the note, but what was their actual contract with the payee. The purpose of Henritze may have been as recited in the instructions, and it may have been that Peters and Moore undertook to raise the money jointly; but if the contract between the maker and the indorsers and the payee was different from that which the form of the note implied, it was necessary to show it in evidence.   These instructions ignore this element, and were properly rejected.   Moreover, had the instructions properly propounded the law and been given,

we do not see how the jury could have reached a different verdict. Hence, the defendants could not have been prejudiced; and we should not disturb the verdict. *Boggess* v. *Taylor*, 47 W. Va. 254.

On his examination in chief, counsel for defendants asked the defendant Moore the following question: "Q. He simply indorsed the note in order to allow you and Mr. Peters to raise the money to protect yourselves, is that right? A. Yes, sir." This question and answer were properly excluded, because leading, if not also immaterial.

The action of the court in striking out the question propounded to the plaintiff on cross-examination, as to why he was interested in getting money to pay off the debts of the Nolan Coal Company, and his answer thereto—"I am a stockholder of that company"—was not prejudicial. The fact was otherwise made to appear in evidence, and besides we do not see that the matter was material.

All other points of error assigned are involved in the action of the court in overruling the defendants' motions to set aside the verdict, in arrest of judgment, and for a new trial. The only grounds urged in the brief and argument of counsel are as to the weight of the evidence on the controlling question, whether the contract with the plaintiff, the payee, was different from what is to be implied from the form of the note. The jury are exclusively and uncontrollably the judges of the weight of the evidence, and of the inferences and deductions of facts proven, and not the court. We cannot, therefore, disturb the verdict unless there has been a plain deviation from right and justice; nor in a doubtful case, merely because the court if on the jury would have rendered a different verdict. We will refer to only some of the salient facts in this case which impress us that the verdict and judgment were right. The evidence shows that Moore and Henritze, the former as managing officer, and the latter as special friend of the former and as attorney for the coal company, without the knowledge of the plaintiff, met the creditors of the company at Huntington and negotiated a contract for the extension of time of payment, the creditors to put up $6000, and Moore and Henritze agreeing to raise $1000 to be paid over to trustees for the creditors. After this agreement with creditors, Moore arranged a meeting with Peters and Henritze at Moore's house, where all agree

that Henritze represented that he thought he could get the $1000 from one Lusk, a friend of his, and it was agreed that if he could the three should jointly indorse the paper of the company as sureties.    Henritze failed to get the money from Lusk.    Peters says he then proposed to furnish the money if Henritze and Moore would indorse the paper.    Henritze says there was no new agreement after the first meeting, but admits that after he failed to get the money from Lusk Peters proposed to furnish it.    No note had been prepared prior to the time Peters proposed to loan the money.    A note representing the original agreement to jointly indorse and become liable would have been made payable to all three indorsers.    The original of the note as executed to Peters as payee, if indorsed, would have rendered him first liable regardless of the order in which the paper was indorsed.    It can not be that this note was intended to represent the original agreement for joint indorsement and joint liability, or a contract by which Henritze should be rendered liable as accommodation indorser for Moore and Peters.    We know from the record that Henritze is a lawyer, and presumed to know the law of contracts of this nature.    We notice also the significant language of the note itself, viz:    "Homestead and all other exemptions waived by the maker and each indorser."    The fact that on October 1, 1904, a few days after arranging with Peters to furnish the money and executing to him the note therefor, Moore and Henritze took a deed of trust from the coal company to secure themselves alone as irregular indorsers of this paper, taken in connection with the form of the note itself, goes a long way to support the claim of Peters that the note in its *prima facie* effect represents the real contract.    And not only is this true, but the fact that the renewal note was made and executed by the same parties in the same form, and delivered to Peters, adds additional strength to the position of the plaintiff.    There is a manifest disposition of the witnesses in this case to adhere strictly to the truth, regardless of the consequences, and this is especially true of the testimony of Mr. Henritze, which is refreshing, tempting us to strain a point in his favor; but we are controlled by too binding rules to overthrow the verdict, and judgment.

We therefore affirm the judgment of the circuit court, rendered on May 18, 1906, with costs to the defendant in error.

*Affirmed.*