# CHARLESTON.

J. E. HARRIS *v.* THOMAS F. WELCH *et als.*

Submitted September 28, 1920. Decided October 5, 1920.

1. PARTNERSHIP—*Action is Maintainable Against One Partner on Whom Notice Was Served.*

   Ordinarily, a contract by which the members of a co-partnership bind themselves is joint and several, wherefore an action against one of them may be maintained. (p. 156).

2. SAME—*Creditor of Partnership Held to Have Elected to Sue Only the Partner on Whom Notice Was Served.*

   If, in an informal proceeding by a creditor against the members of a firm composed of two persons, by motion upon notice, the notice is directed to both members, but served on only one, and the plaintiff and the party served proceed to trial of issues raised by pleas of *non est factum, non assumpsit* and

non-existence of the partnership, the plaintiff is deemed to have elected to sue only the party upon whom the notice was served. (p. 156).

3. JURY—*Jury Held Properly Sworn to Try Issues Between Firm Creditor and Partner Proceeded Against.*

It is not erroneous in such case to have the jury sworn to try the issues between the plaintiff and the party proceeded against. (p. 156).

4. PARTNERHIP—*Prima Facie Case of Existence of Partnership by Plaintiff Does Not Shift Burden of Proof to Defendant to Prove Non-existence.*

On an issue as to the existence of a partnership, he who asserts it carries the burden of proof, and it is erroneaus to give an instruction that he shifts it upon the other party by proof of a *prima facie* case, so as to require him to prove nonexistence thereof. (p. 157).

5. TRIAL—*Requested Instructions in Action on Note Representing Loan Properly Refused in Absence of Evidence of Loan.*

In such case, the trial court may properly refuse instructions, impliedly requiring the plaintiff to prove special authority in the member of the firm by whom the obligation sued on was executed in the firm name, to make the contract or to make contracts generally, binding the firm, and directing inquiries as to whether the loan represented by the note sued on was made to the party executing it, for his personal use, in the absence of evidence to prove such a loan. (p. 157).

6. PARTNERSHIP—*Failure to Deny Partnership Relation in Former Action Held Admissible Against One Sued as Member of Firm.*

Failure of the defendant in such an action, setting up nonexistence of the partnership as a defense, to deny the relation in another action against him as a member of the same firm, is admissible against him as an admission, and may be referred to by an appropriate instruction, as evidence to be considered by the jury. (p. 159).

7. EVIDENCE—*Letters Between Alleged Partners Indicating That Relationship Held Sufficiently Authenticated.*

A series of letters from one of the persons charged as partners to another of them, relating to the business of the alleged firm and received in the usual course of mail, the handwriting of one of which is proved to be genuine and some of which use language indicating a partnership relation, are ad-

. . missible as evidence on an issue as to whether they were partners. .(p. 159). ..

(WILLIAMS, PRESIDENT, absent).

Error to Circuit Court, Taylor County.

Action by J. E. Harris against Thomas F. Welch and others, trading as the Elkins Cooperage Company. Judgment for plaintiff, and defendant Thomas F. Welch brings error.

*Reversed and remanded.* .

*O. E. Wyckoff,* for plaintiff in error.
*Warder & Robinson,* for defendant in error.

POFFENBARGER, JUDGE:

The judgment complained of on this writ of error was taken against the plaintiff in error as a member of a copartnership known and doing business as the Elkins Cooperage Co. The other alleged member of the firm is L. E. Evans who, for some reason, was not served with process, As to him, no return is found in the record. The action was by motion and based upon a promissory note for the sum of $300.00, payable to the plaintiff and signed "Elkins Cooperage Co. L. E. Evans." The trial was by jury and resulted in a verdict for the plaintiff in the sum of $385.60, on which judgment was rendered.

If the partnership existed, Welch could be sued alone. All contracts of partners are joint and several unless expressly made otherwise, and every partner is liable to pay the whole. In what proportion the others are contributors is a matter among themselves. *Courson* v. *Parker,* 39 W. Va. 521; 2 Tuck. Bl. Com. 141; *Brown* v. *Belcher,* 1 Wash. (Va.) 9. The proceeding here is informal, it being by motion upon notice. The notice is directed to both parties but served on only one. We interpret the action of the plaintiff as an election to sue Welch only. ,:

The absence of Evans leads to a controversy as to the form of the oath administered to the jury resulting in' an exception to a ruling of the court respecting it, on which an assignment of error is based. Since Harris and Welch were the only parties to the suit, it was entirely proper to swear the jury to try the is

sues joined between them.  As there were no other parties, those were the only issues raised.

A remark made by the court, respecting the issues, on the occasion of the administration of the oath to the jury, is the basis of an assignment of error.  Three pleas had been filed, *non est factum, non assumpsit* and non-existence of the partnership. The remark was that the issues were *non est factum* and *non assumpsit*.  This was entirely harmless.  The issue tried, and the only one really contested, was the existence of the partnership relation.  There may have been more pleas than were necessary but we enter upon no inquiry as to that, since it is immaterial.

The proof is that the Elkins Cooperage Company was originally composed of C. D. Henderson and L. E. Evans, and was engaged in the manufacture of some sort of lumber.  Welch claims he bought out both of the parties by a verbal contract, several months before the date of the execution of the note sued on, and that, at that time, the business of the former partnership belonged to him individually.  He did purchase the interest of Henderson by a written contract dated, February 20, 1914. Evans testified in the case and denied that Welch had acquired his interest, and also insisted that the partnership continued long after the date of the note.  Welch's version of the transaction between himself and the Elkins Cooperage Co., prior to the date of his purchase of the interest of Henderson, is that he handled the product of their mills, on a brokerage basis, taking a commission of five per cent.; and that, in November 1913, finding the company in debt to the extent of about $1,700.00, partly represented by notes to which he was a party in some capacity, he purchased the interest of both parties.  While he does not say what he paid them for their interests, it seems that a good portion of the indebtedness was due to him and he took the firm's property, in consideration of what it owed him and his assumption of its debts due to other parties.  He further claims his verbal agreement was reduced to writing and signed in February 1914, but he produces no contract with the name of Evans on it. The only contract shown was between him and Henderson.  It is fairly well proved that Evans continued in charge of the business and kept the books.  Several letters written by Welch,

addressed to Evans, and dated, respectively, June 19, 1914, January 17, 1915, March 21, 1915, April 5, 1915 and April 22, 1915, tend very strongly to corroborate the testimony of Evans, to the effect that he had not sold out and was still interested in the business with Welch, at the date of execution of the note. One of them referred to a controversy with one Lawson, concerning a steam boiler, saying: "He (Lawson) intends to give us trouble and really intends to sell it for the note with Henderson's help. So we just as well begin the fight on him and arrange to bring Henderson up when the trial comes off." In another he said: "We will have to close out some of the Elkins Cooperage Company's stock for you know practically all of your money is in that stock." Lawson did sue Welch and Evans as partners, as it was expected he would, and, in that suit, Welch did not deny the partnership relation. That the evidence, if all admissible, was sufficient to carry the issue to the jury, is not controverted.

At the instance of the plaintiff, the court instructed the jury that the plaintiff carried the burden of proof as to the existence of the partnership, but that he was required only to make out a *prima facie* case of the existence thereof, to shift the burden to the defendant, so as to require him to prove there was no partnership and that the parties had not held themselves out as partners. The defendant requested an instruction telling the jury that the burden of proof of the partnership rested upon the plaintiff, and that they should find for the defendant, if they believed from the evidence that the partnership did not exist, which the court declined to give in the form in which it was prepared, but offered to give with a modification making it conform to the proposition propounded in plaintiff's instruction to which reference had been made. That proposition is unsound and the court erred in both instances. The plaintiff bears the burden of proof throughout. *Gordon* v. *Funkhouser*, 100 Va. 657. Establishment of a *prima facie* case shifts, not the burden of proof, but merely the weight of evidence. It makes it necessary for the defendant to take proof to repel and overcome the *prima facie* case made. If he succeeds in doing that, the weight of evidence shifts in the other direction. This does not change the burden of proof. It always remains upon him who alleges

the fact to be established. Jones, Ev., Sec. 177. Plaintiff's instruction No. 1 was misleading. It required too much of the defendant and also tended to confusion of the issue.

An assignment of error based upon the giving of plaintiff's instruction No. 2, telling the jury that Welch's failure to deny the existence of the alleged partnership, in the suit brought against him and Evans by Lawson, was a circumstance they might take into consideration, in determining whether or not the partnership existed at the time of the execution of the note sued on. There was also an exception to the admission of the evidence of that transaction. Nothing is said against the propriety of the instruction except that it is based upon what is regarded as inadmissible evidence. Welch's failure to deny the existence of the partnership was conduct in the nature of an admission of the relation charged. It was admissible, but not conclusive, evidence. *Peters* v. *Nolan Coal Co.,* 61 W. Va. 392, 396. There was no impropriety in the direction of the attention of the jury to it, by the instruction complained of.

Defendant's prayer for instructions Nos. 3, 6 and 7 were properly refused. His instruction No. 3, if given, would have been misleading, because it impliedly authorized the jury to find for the defendant, in the absence of proof of special authority in Evans to execute the note. If he was a partner, he had presumptive authority to do so, and it was unnecessary for the plaintiff to prove such special authority. Nos. 6 and 7, would have directed the jury to inquire whether the money evidenced by the note had been loaned to Evans personally. There was no evidence upon which to base such an inquiry. Since Evans, if a partner, had implied authority to borrow money for the use of the firm, it devolved upon the defendant to prove that the loan was made to him personally, or to prove facts and circumstances, known to the plaintiff, which made it obvious to him that the money was borrowed for personal use, or which were sufficient to put him upon inquiry as to the purpose for which it was borrowed. *Merchants etc. Bank* v. *Ohio Valley Furniture Co.,* 57 W. Va. 625; *Bank of Greenville* v. *Lowry & Co.,* 81 W. Va. 578.

There is an assignment of error based upon the admission of the letters above referred to, on the ground of alleged lack of suf-

ficient authentication. The writing thereof was not denied by Welch. As to some of them, Evans says they were received in the usual course of mail. As to one of them, he swears to the handwriting of Welch. They seem to constitute part of a course of correspondence pertaining to the business of the firm. In some instances, one letter refers to another. The evidence bearing on the question of their genuineness was amply sufficient to carry it to the jury.

For reasons already stated, there would have been no error in rendering judgment against Welch alone, if the verdict had been unimpeachable. But, for the error in the ruling of the court upon instructions already noted, the judgment will have to be reversed, the verdict set aside and the case remanded for a new trial.

*Reversed and remanded.*